## Williams's Appeal.　Edwards's Estate.

*Liability of executors for arrears of ground-rent accruing after death of testator.—Land alone liable.*

1. Though the covenant in a ground-rent deed is personal on the part of the covenantor, yet as to arrears of rent accruing after his decease, the landlord is restricted to the realty out of which it issues, and is not entitled to payment out of money in the hands of the executors.

2. But the personal representatives of the covenantor may be sued for the breaches of the covenant in the ground-rent deed, occurring after his death, but the judgment will be restricted to the land bound by the covenant.

Quain's Appeal, 10 Harris 510, considered and affirmed
Taylor *et al. v.* Painter, 3 Phila. Reps. 365, affirmed.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by J. W. Williams, from the decree of the court below, on the distribution of the estate of George W. Edwards, deceased.  The appellees are the executors of deceased.

George W. Edwards died August 27th 1861.  By indenture, bearing date the 13th of April 1853, Catherine Keppele had conveyed to him in fee, a lot of ground in the city of Philadelphia, reserving a yearly rent of $462, payable in even and equal portions on the first days of April and October in every year thereafter for ever.  The deed provided that on default of payment the grantor, her heirs and assigns, might

distrain for the rent, and if sufficient distress could not be found on the land, might re-enter upon the same as though the said indenture had never been made. Then came the following covenant:—

"And the said George W. Edwards, for himself, his heirs, executors, administrators, and assigns, doth covenant, promise, and agree to and with the said Catherine Keppele, her heirs and assigns, by these presents, that he the said George W. Edwards, his heirs and assigns, shall and will well and truly pay, or cause to be paid to the said Catherine Keppele, her heirs and assigns, the aforesaid yearly rent or sum of four hundred and sixty-two dollars, lawful money aforesaid, on the days and times hereinbefore mentioned and appointed for payment thereof."

It was also agreed that the grantee, his heirs or assigns, should within one year erect on the said lot such buildings as should be necessary fully to secure the said yearly rent. The deed contained the following proviso:—

"Provided always, nevertheless, that if the said George W. Edwards, his heirs or assigns, shall and do at any time hereafter pay, or cause to be paid to the said Catherine Keppele, her heirs or assigns, the sum of seven thousand seven hundred dollars, lawful money as aforesaid, and the arrearages of the said yearly rent to the time of such payment, then the same shall for ever thereafter cease and be extinguished, and the covenant for payment thereof shall become void;" whereupon the grantor, her heirs or assigns, are to execute a release. Then followed a covenant for quiet enjoyment.

By two other indentures of the same date, Catherine Keppele conveyed two other lots of ground in the city of Philadelphia to said George W. Edwards, reserving yearly rents of $474 and $492, the two latter indentures being in other respects identical with the first.

The buildings to secure the rent were erected, and the rent was paid up to Mr. Edwards's death. A claim was put in before the auditor on behalf of the heirs of Mrs. Keppele for $2142, due October 1st 1862, arrears of rent on the above-mentioned lots, which had accrued after Mr. Edwards's death, out of the fund in the hands of the executors, which was made up entirely of personal property and the income of real estate. The auditor disallowed the claim, and the Orphans' Court affirmed his decision. The appellant is one of the devisees and heirs at law of Catherine Keppele.

George W. Edwards, in his last will and testament, provided as follows:—

"I, George W. Edwards, of the city of Philadelphia, do make this my last will and testament.

" In the first place, I direct my just debts and funeral expenses to be fully paid and satisfied.

" Secondly. I give and bequeath to my dear wife, Elizabeth R., all my furniture, books, silver ware, watches, jewelry, paintings, and all articles in use in my dwelling, for her own absolute use.

" Thirdly. I give, devise, and bequeath all the rest, residue, and remainder of my estate, real and personal, whatsoever and wheresoever, to my executors hereinafter named, and the survivors or survivor of them, and the heirs, executors, administrators, and assigns of such survivor, upon the following trusts nevertheless, that is to say, upon trust to hold, manage, let, and demise the real estate, and to hold, invest, re-invest, and keep invested my personal estate, and to collect and receive the rents, incomes, and profits thereof, and out of the same, in the first place, to pay and discharge all taxes, charges, ground-rents, and all interest upon encumbrances on my said estate, together with all charges and expenses incident to the management and reasonable repair of the same, and to this trust.   And upon the further trust, after paying the said charges, to apply one-fourth of the net income of my whole estate as it shall accrue, and as soon as it shall amount from time to time to a reasonable sum, to the payment and discharge of my debts and encumbrances upon my real estate."

These trusts are to continue till the death of his wife, and if she dies before his youngest child comes of age, then till his youngest child comes of age.   The executors are also empowered to sell and buy real estate.

The question before the auditor and the court below was, whether personal property in the hands of the executors should be appropriated to the payment of arrears of ground-rent, falling due after the death of Mr. Edwards.

*W. Meredith, Cadwalader Biddle*, and *W. M. Meredith*, for appellant, argued : 1. That where the testator is bound by an express covenant his executors are bound by it, whether they are mentioned in it or not, and are liable, to the extent of their assets, for all breaches of it, by whomsoever committed, and whether committed in the testator's lifetime or after his death.

2. That this rule applies to the executors of the grantee in a ground-rent deed who covenants to pay the rent.

3. That Quain's Appeal, 10 Harris 510, does not rule this case.   Or, if the 3d point should not be sustained, then, 4. That Quain's Appeal is against law; and, 5. That it conflicts with an Act of Assembly.

On the first point they cited Dyer 257 a; 6 Bing. 656 ; Bac. Abr. *Executors and Administrators* (P.), 1; Thurseden *v.* War-

[Williams's Appeal. Edwards's Estate.]

then's Executors, 2 Bulstr. 158; Macartney *v.* Blundell, 2 Ridgw. P. C. 113; Payne's Executor *v.* Sampson, 2 Washington 155; Thursby *v.* Plant, 1 Saund. 241 a, and note 5: Brett *v.* Cumberland, Cro. Jac. 521; Wilson *v.* Wigg, 10 E. 313; Auriol *v.* Mills, 4 T. R. 98; Enys' Executors *v.* Donnithorne's Executor, 2 Burr. 1190.

On the 2d point they cited Scott *v.* Lunt's Administrator, 7 Pet. 596, and Van Rensselaer's Executors *v.* Platner's Executors, 2 Johns. Cas. 17.

3. It was decided in Quain's Appeal, 10 Harris 510, that the executors of the covenantor in a certain ground-rent deed were not liable for arrears of rent which accrued after his death. But the rents in covenant in that case were evidently perpetual. In this case, 1. The covenant is not perpetual. The deed contains an express provision that the rent may be redeemed at any time. So the executors may redeem it, and proceed to distribute the estate as fast as their testator will permit. It may be objected that the redemption is to be by the heirs or assigns; but devisees are assignees, and if this rent is a charge upon the assets of the executors, then they are the assignees of a real and personal estate upon which this rent is a charge, and so may redeem it, especially as they hold this double estate in trust to pay and discharge all ground-rents and charges upon it. But simply as executors, representing the person of their testator, they could redeem. 2. The covenantor has clearly manifested his intention to bind his executors. Admitting that the liability of executors on a perpetual covenant "could not have been contemplated at the creation of the ground-rent," yet it is certainly possible that their liability might have been contemplated at the creation of the ground-rent, which is not perpetual; and if it was contemplated, how could it be more clearly shown than by expressly binding them in the deed? He does covenant for them. Indeed, as the rule is that they are bound whether mentioned or not, the mention of them is of no effect except as an indication of intention: Kershaw *v.* Supplee, 1 Rawle 133.

4. Quain's Appeal is against law. We respectfully ask for a reconsideration of that decision.

The idea of a covenantor expressly binding his executors without intending to bind them is, so far as we have been able to discover, entirely novel. We believe there is no former case whatever in which executors were held not liable for breaches, committed after the death of their testator, of a covenant in which they were mentioned. The evidence of an intention not to bind them would doubtless have to be very strong to overcome the mention of them.

The encumbrance in the present case may continue for a long or a short period. This, however, is optional with the covenantor,

his heirs and representatives, who may pay it off whenever they feel inclined to. But there is no case or principle to show that length of time affects the liability of executors on a covenant which expressly binds them. If Quain's Appeal is law, no annuity can be held in fee simple. "The office of executors and administrators is not perpetual," says the learned judge; but it certainly continues as long as they have duties to perform. In Bradford v. Bradford, 6 Whart. 236, the testator directed that his worldly goods should be kept as a general fund by his executors and their successors for a hundred years, the rents and profits to be divided among his children and their children. The will was not held void on that account. In this case, the executors of Mr. Edwards are to hold the real and personal estate until his widow dies, or his youngest child comes of age. If these provisions are not void, can the executors deny their liability for this rent on the ground that it would keep the estate open, when the very will under which they act obliges them to keep it open?

The learned judge grounds his opinion on Torr's Estate, 2 Rawle 252, and Dickinson v. Callahan's Administrators, 7 Harris 227. The latter was the case of a covenant strictly personal to the covenantor; it is not in point. In Torr's case the rent which Torr's administrators paid had accrued after his death, and the very question we are now discussing was decided, or rather taken for granted in our favour. A question arising about marshalling the assets, it was held that the real assets in the hands of the administrators were primarily liable, and it was admitted by implication that the personal assets would have been liable in the event of a failure of the real assets. The executors of Mr. Edwards have both real and personal assets: so far the two cases are alike; but if the executors cite Torr's Estate as an argument from analogy, they can make the two cases more similar, and vastly improve their argument by paying these arrears of rent. The precise question can never arise in this case until they do. If Quain's Appeal is law, this court in Torr's Estate sanctioned a *devastavit;* and that while it was decided in that case that the profits of the real estate in the hands of the administrators were primarily liable, in Quain's Appeal the fact that "all the lands of the decedent are assets for the payment of debts" is one reason given for not holding the executors liable at all. The cases previously cited show that the executors are liable for this rent to the extent of what the law gives them, to wit, the personal estate. Torr's Estate decided that the administrators of an insolvent estate who had received, in addition to what the law gave them, enough from the profits of the real estate to satisfy rent which had accrued after the intestate's death, should satisfy it with them. The liability of the administrators was not doubted.

The question was as to which of two funds in their hands should take the burden.

The auditor is mistaken in supposing that Quain's Appeal was affirmed in White's Executors *v.* The Commonwealth, 3 Wright 167. It is true that the learned judge refers, in passing, to the point in Quain's Appeal as one that had been decided, but without expressing either approbation or disapprobation of it. So far from approving it, he proceeds to lay down principles, upon which the case is decided, in direct opposition to it.

5. Quain's Appeal conflicts with the 8th section of an act approved April 25th 1850, Purd. 516, the object of which was to give "a full and complete remedy" by action of covenant against the lessee in a deed-poll, his heirs, executors, administrators, and assigns, against whom it had been decided that the action did not lie : 7 Barr 329. It makes no distinction between the executors of a lessee in fee and the executors of a lessee for life or years, or between the executors and the lessee himself; and a full and complete remedy is to be had against them, not merely for the rent which has issued out of the premises during the life of the lessee, but "whether the premises out of which the rent issues be held by deed-poll or otherwise." If some of these arrears had accrued during the life of Mr. Edwards, Quain's Appeal would deny us a full and complete remedy against his executors; but as it is, we are left with no remedy against them at all. We are in a worse position than the lessor in a deed-poll before the act, for he could have maintained debt.

*G. M. Wharton* and *J. H. Edwards*, for the appellees.—The main point presented seems to be the very point decided in Quain's Appeal, and since affirmed. That case came up from the Orphans' Court as this does. The arrears of rent were there presented as a claim against the decedent's personal representatives, on an audit of their accounts. This claim was presented in like manner.

There is nothing in Quain's Case to show that the ground-rent deed there differed substantially from those now before the court. The covenant for payment of the rent in ground-rent deeds, is always, in form, perpetual. The clause of redemption is a distinct one. It confers a privilege upon the owner in fee of the land, of which he may avail himself or not, at his pleasure. No one can redeem but the owner in fee of the land. The executors have no such power. They are not named in the redemption clause of ground-rent deeds. These deeds are in the usual form. They do not extend to the executors the power of redemption.

The words of the covenant, embracing executors and administrators, may be well satisfied by confining them to payment, by those persons, of rent accrued in the lifetime of the testator or

intestate. The case of Quain's Appeal was decided in 1854. It has been affirmed more than once. It has been acted on by the profession since, we think, uniformly, and has become a rule of property.

It was decided on the authority of Torr's Estate, 2 Rawle 252, in 1830, and of Callahan v. Dickinson, 7 Harris 227, in 1852, and has been affirmed since in the following cases: Bland's Administrator v. Umstead, 11 Harris 316; Carr v. Lowry's Administrator, 3 Casey 257; White's Executor v. The Commonwealth, 3 Wright 167; D'Invilliers v. Biddle, Executor, not reported.

English cases are not of much value on this point, because ground-rent deeds, as in use here, do not prevail there. English law forbids it. They are peculiar to this country, perhaps to a few of the states: Van Rensellear v. Platner, 2 Johns. Cas. 17.

The principle of Quain's Case is a perfectly sound one, and we respectfully appeal to the court, *stare decisis*.

As to the Act of April 25th 1850, it was designed to give the action of covenant for rent reserved by deed-poll, or where both parties had not signed the deed. See Louer v. Hummel, 9 Harris 454. It had been previously decided that, in such case, covenant would not lie: Maule v. Weaver, 7 Barr 329. And such is the plain meaning of the act. It seems to have had no other purpose.

The opinion of the court was delivered, May 5th 1864, by

THOMPSON, J.—Quain's Appeal, 10 Harris 510, resulted rather as a consequence of the difficulty of enforcing the covenant with its incidents, against the executor for breaches of it after the death of the covenantor, than on account of its absence in fact or law. Indeed, it was expressly present, but it was believed to be incapable of full performance by an executor, being in its nature *perpetual*, while the office of executor was temporary, existing only so long as necessary to settle and distribute the estate of the testator. The covenant, in its terms, was as usual, and ran "*for ever.*" The duties of the executor, at least as to the collection and liquidation of the debts, the distribution to heirs and devisees, is limited to a few years only. The *office*, for that is its true nature with us, generally ceases with these duties. It was thought, therefore, that to make the latter dependent on the former was to postpone the ultimate discharge of its duties indefinitely—a thing the law would not allow. From the incongruity thus existing between conflicting principles, each equally claiming to be indispensable, it was thought, in view of the perpetual quality of the covenant, that the entire estate of the covenantor was not to be regarded as answerable for *indefinitely recurring* breaches of his covenant to pay ground-rent; that the

11 WR.—19

personal covenant of the original grantee of the *fee* could not have been regarded as of value "in a series of tenants lasting for ever;" but that the covenant running with the land, increased in value by anticipated improvements, was the security for the rent, and it was determined that the assets in the hands of the administrator were only applicable to the breaches of the ground-rent covenant which had accrued during the lifetime of the decedent—not to those recurring afterwards. This is the substance of all that was decided in that case. The decision was made ten years ago, and, although it has been more than once assailed, it has been steadily adhered to, so far as it went. I do not mean now to enter the lists in defence anew of its principles; time and repeated recognition have given them sufficient stability, without further efforts of this kind. Were a discussion to eventuate in its overthrow, it is not within the range of ordinary foresight to tell what effect it might have in disturbing estates settled in accordance with the law as ruled by it. *Stare decisis* is generally a safe rule. A departure from it very often realizes that it is better "to bear the ills we have, than fly to others that we know not of." We are satisfied with the doctrine of the case, and do not intend to modify it. It preserves the congruity of the law, which the antagonist principle would not do.

Let it be recollected, however, that the question of *parties* to suits on ground-rent covenants for breaches, after the death of the covenantors, was neither discussed nor decided in Quain's Appeal. The case is complete with denying the liability claimed in it. That was all that was involved. The money was in court, as in this case, and it was a question of distribution that was directly at issue. I do not think it a corollary of the principles announced in it, that the personal representatives of the covenantor may not be *sued* for breaches occurring after his death, as has been thought by some. I have no doubt that many cases have been so proceeded in in the various courts of this city. I find one reported in 3 Phila. Rep. 365 (Taylor *et al. v.* Painter, Administrator of Taylor), in which the District Court were unanimously of opinion that the action would lie against an administrator for such subsequent breaches, but that the judgment would be restricted to the land bound by the covenant. In the able opinion of Judge Stroud, in that case, it is said: "the question is new, so far as our judicial decisions show. The records of our courts, we are quite sure, exhibit hundreds of instances in which judgments have been recovered, where the relation of the parties to each other, and to the subject-matter of the actions, correspond plainly and entirely with this case." The local practice thus shown indicates the proper rule, and should not be readily departed from, especially as adherence seems so

[Williams's Appeal.   Edwards's Estate.]

necessary to the quiet of community in regard to the security of their titles.

We have often said that it is the duty of the court so to fashion their remedies as to execute the law in the spirit of its requirements; it best subserves the ends of justice. We have many instances of this plasticity, but I will refer to but a few instances showing it. Before the passage of the Act of 24th February 1834, providing a remedy in the Orphans' Court for the recovery of legacies charged on land, there is a striking instance of the exercise of this power. It was done in a suit against the devisee, restricting the judgment to the *land charged.* Brown *et al. v.* Furer, 4 S. & R. 213, recognised in Gauze *v.* Wiley, Id. 509; Moore *v.* Reese, 13 Id. 456; Martzell *v.* Stouffer, 3 Penna. Rep. 398, and Shelly *v.* Shelly, 8 W. & S. 153, are cases of the exercise of the same power under different and diverse circumstances. Many more instances of the successful application of analogous remedies and judgments in the courts, when necessary to meet the ends of justice, might be shown, but these will suffice for the present. It only requires the exertion of the same liberality in practice, to render the remedy under the ground-rent covenant entirely harmonious and practical, avoiding the difficulties noticed. This can be accomplished by allowing the covenant to be asserted against the personal representatives of the covenantor, but restricting the judgment to *the land.* In the ordinary course of things, there will always come a time when the realty will, at all events, be the only thing to respond for a breach of the covenant in failing to pay the rent. This is evidently contemplated in the use of the covenant for re-entry.

These views may seem outside of the very points presented in this case, but they are not so in fact; they answer the *argumentum ab inconvenienti* so earnestly pressed as a reason for overthrowing the decisions on the point in question. But if they be in any respect an expansion of the ground of contest, this will be justified, if they have the effect to allay anxiety in regard to titles passed under sales where executors or administrators may have been defendants in judgments for ground-rents accrued after the death of the covenantor. In this opinion all my brethren agree.

We think the auditor and court below decided rightly that the ground-rent landlord was not entitled to a distribution out of the moneys in the hands of the executors, on account of rent accrued after the death of the testator, the covenantor.

> Appeal dismissed, and decree affirmed at the costs of appellant.

WOODWARD, C. J., was absent at Nisi Prius when this case was argued.