## WILLIE RUSHTON v. WM. A. LIPPINCOTT.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADEL-PHIA COUNTY.

Argued January 18, 1888—Decided February 20, 1888.

1. An action of covenant upon a ground-rent deed, where it is not sought to enforce the judgment against real estate of the deceased covenantor other than that out of which the rent is reserved, is not within § 34, act of February 24, 1834, P. L. 80, requiring the widow and heirs or devisees to be made parties thereto.

2. A sheriff's sale of real estate, on a judgment in covenant for ground-rent reserved, discharges a mortgage upon the premises subsequent to the ground-rent deed; and this, notwithstanding the purchaser is the husband of one of several heirs at law to the land who have suffered the ground-rent to become in arrear.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 159 July Term 1887, Sup. Ct.; court below, No. 45 September Term 1880, C. P. No. 2.

On August 20, 1880, Willie Rushton brought an action of ejectment against William A. Lippincott, to recover a house and lot on the west side of Eighth street above Fairmount avenue. The cause was put at issue by rule to plead on May 21, 1886,

under a disclaimer by the defendant of part of the land in dispute and a plea of not guilty as to the residue.

At the trial on October 23, 1886, the facts appeared:

On October 9, 1846, one Steinmetz conveyed the property in dispute, reserving a ground-rent of $90.25, to John Ketcham, who on April 26, 1856, executed a mortgage thereon to Sophia W. Plitt, for $3,000, payable in one year with interest; recorded. In 1878, Mr. Ketcham died leaving a widow and five children, one of whom was the wife of William A. Lippincott, the defendant, letters of administration being issued to his son Hewlings C. Ketcham. In 1879, the mortgage was assigned to Willie Rushton, the plaintiff.

Upon the premises there was a three-story brick dwelling, but unoccupied by the widow and heirs after the death of John Ketcham. The ground-rent was left unpaid and, on January 29, 1880, Steinmetz's executors, to No. 801 December Term 1879, C. P. No. 1, brought an action of covenant against Hewlings C. Ketcham, administrator of John Ketcham, to recover three half-yearly payments of the ground-rent then in arrear. In this action, on February 17, 1880, judgment was obtained for want of an appearance after due service, and the sum due liquidated at $142.47, to be levied of the land described in the ground-rent deed. The property was then condemned upon a fieri facias and, upon writ of venditioni exponas issued on March 4, 1880, sold at sheriff's sale to William A. Lippincott, and the sheriff's deed delivered.

The plaintiff proved his title as mortgagee, and rested. The defendant then offered in evidence the deed from Steinmetz to Ketcham, reserving the ground-rent, the record of No. 801 December Term 1879, C. P. No. 1, the writs of execution process and the sheriff's deed to William A. Lippincott, before referred to. The plaintiff objected to the offer of said record and deed, because it did not appear that any scire facias had been issued to the widow and heirs of John Ketcham, deceased, against whose administrator the suit was brought under which the sheriff's sale was had, in accordance with the provisions of § 34, act of February 24, 1834, P. L. 80. The objection was overruled and offers admitted.[1]

It was then agreed that John Ketcham died intestate, holding the property in fee subject to the ground-rent and the

plaintiff's mortgage, and leaving a widow and children, one of whom was the wife of the defendant; that the decedent died insolvent, heavily indebted to William A. Lippincott, and that his real estate was incumbered to more than its value, which was $14,000 or $15,000.

Under the foregoing facts the court directed a verdict for the plaintiff subject to the decision of the following questions reserved.

1. Whether the proceedings in the case of Spencer et al., executors of Steinmetz, against Ketcham, administrator, the record of which was offered by the defendant, passed title to the purchaser.[2]

2. Whether the purchaser being the husband of one of the heirs, took as trustee for them and subject to their ancestor's mortgage under which plaintiff claimed.[3]

On June 1, 1887, the court in banc ordered judgment for the defendant upon the points reserved, MITCHELL, J., delivering an opinion, which, after showing how the questions arose, proceeded:

1. When it was laid down in Quain's Appeal, 22 Pa. 510, that an executor is not liable for ground-rent accruing after the death of his testator, a serious question arose as to the proper remedy to enforce payment. By the usual terms of the deed, the lessee covenanted for himself, his heirs, executors, etc., to pay the rent. A failure to pay was a breach for which his executor was expressly stipulated to be liable. He seemed, therefore, the proper party to sue, as he unquestionably was, for the rent accruing in the testator's lifetime. This question came before the District Court in Gardiner v. Painter, 3 Phila. 365, and was elaborately considered in an opinion by STROUD, J., holding that the executor was the proper party defendant, but that the judgment should be restricted to the land charged. The same question was before the Supreme Court in Williams's Appeal, 47 Pa. 283, and after argument by the most eminent counsel at the bar, the decision in Gardiner v. Painter was expressly approved, and, referring to the remark of Judge STROUD, that the records of the District Court would show hundreds of judgments of a similar kind, THOMPSON, J., says, " the local practice thus shown indicates the proper rule."

It was argued by the plaintiff in the present case that while the judgment might be good, under the authority of Gardiner v. Painter, yet that execution was void unless the heirs were brought in by scire facias under § 34 of the act of February 24, 1834. But it is plain that this section was meant to protect land in the hands of heirs and devisees from being charged without notice to them with the payment of general debts of the ancestor for which the land is not primarily liable, and does not apply to cases where the land is already charged as by mortgage: Chambers v. Carson, 2 Wh. 365; or by judgment against the ancestor in his lifetime, McMillan v. Red, 4 W. & S. 237; McMurray v. Hopper, 43 Pa. 468. All the reasons of these decisions apply with equal force to the case of ground-rents.

I have examined the record of Gardiner v. Painter, D. C., No. 1859 December Term 1857, and find that a fieri facias and venditioni exponas were issued in due course and the land sold, without any scire facias to the heirs. This would seem to be conclusive that the District Court in giving judgment against the executor meant that execution de terris should follow; and I am informed by two of the most experienced and eminent conveyancing counsel at this bar that such has been the uniform practice. That this practice is not merely local is shown by the language of Judge ROGERS in McMillan v. Red, 4 W. & S. 238, where, as long ago as 1842, he says, in reference to a scire facias to revive a judgment obtained during the lifetime of the ancestor, that the act of 1834 does not apply, and "such has been the construction of the act in perhaps a majority of the judicial districts." These established decisions in perfectly analogous cases, and the express approval of Gardiner v. Painter by the Supreme Court in Williams's Appeal, are conclusive of the validity of the judgment and execution in the present case to pass the title to the purchaser.

2. Upon the second question reserved we are saved the necessity of further discussion by the decision of the Supreme Court in Rauch v. Dech, 116 Pa. 157, announced since the argument of the present case. It was there held that the lien of a discharged mortgage is not revived by the mortgagor's reacquirement of the title to the mortgaged property, unless he has been guilty of fraud. The principles of that case apply à

fortiori to this. The mortgage was discharged by a sale under a prior incumbrance with which the defendant was in no wise concerned. There is no imputation of fraud on his part, nor is it claimed that he did not buy the land in good faith with his own money. His only connection with the land prior to his purchase, was as husband of one of the tenants in common of a barren legal title, cast upon them by descent, and not reduced to possession or recognized by them in any way. In the face of these facts, to hold, in an action, not by the other co-tenants, but by an adverse incumbrancer, that the defendant must be conclusively presumed to have bought as trustee for his wife, and therefore that he is remitted to her prior title, that her title enures to the benefit of all the co-tenants, and is therefore the title of the ancestor, and subject to the incumbrances due by him, would be directly contrary to the principle of Rauch v. Dech.

Judgment is therefore entered for defendant upon the points reserved, notwithstanding the verdict.

Judgment being entered and a bill of exceptions sealed, the plaintiff then took this writ specifying that the court erred:

1. In admitting the defendant's offer.[1]

2. In ordering judgment for the defendant non obstante veredicto on the first point reserved.[2]

3. In ordering judgment for the defendant non obstante veredicto on the second point reserved.[3]

4. In deciding that the defendant could set up against the plaintiff's mortgage the title acquired by him at the sheriff's sale, it having been admitted that the mortgagor died intestate prior to the sheriff's sale, leaving a widow and five children, one of whom was the wife of the defendant.

5. In not entering judgment for the plaintiff on the verdict.

*Mr. R. L. Ashhurst* and *Mr. Rowland Evans*, for the plaintiff in error:

1. The court certainly erred in holding that the provisions of § 34 of the act of February 24, 1834, did not apply to an action on a covenant for ground-rent, thus introducing an exception to the rule of that act, stated in McLaughlin v. McCumber to be a rule without an exception. The evil to be

Arguments.

remedied by that act was that, prior thereto, real estate being assets for the payment of debts, a judgment could be obtained against or confessed by a personal representative of a decedent, and his land sold without any notice to the widow or heirs; when so sold, the title conveyed was such that in ejectment the heir could not deny the debt for which the judgment was recovered: Payne v. Craft, 7 W. & S. 458; Meanor v. Hamilton, 27 Pa. 137; Sergeant's Heirs v. Ewing, 36 Pa. 161; Fritz v. Evans, 13 S. & R. 15. In consequence of this, the real estate of a family might be sacrificed at sheriff's sale, though there was sufficient personal property, or, in point of fact, the debt had been satisfied: Report of Commissioners, 2 Parke & J. 759; Warder v. Tainter, 4 W. 270.

2. The 34th section of the act is part of the revised civil code submitted by the commissioners. The natural inference, therefore, is, that its provisions were intended to be as wide as the evil to be cured. The language must be read as having this breadth. The words of the act apply to all actions. The provisions as to the intent to charge the lands of the decedent must be read as equivalent to the words used in pari materia in the report of the commissioners, " to obtain satisfaction out of the land." The section concerns execution, not lien: Schwartz's Est., 14 Pa. 45; Sample v. Barr, 25 Pa. 457. Therefore, the act forbids taking in execution the property of a decedent without a scire facias, and it is fallacious to say that it does not apply to actions of ground-rent, because the land is already charged.

3. It has been sought to assimilate an action of covenant on a ground-rent to an action of scire facias on a mortgage under the act of 1705. But the latter remedy was a special statutory proceeding, taking the place of a suit in equity. The judgment to be entered is, that the plaintiff have execution by levari facias, by virtue of which the mortgaged premises shall be taken in execution and exposed for sale. Thus it is a suit purely in rem: Mevey's App., 4 Pa. 82; Mather v. Clark, 1 W. 491; Cowan v. Getty, 5 W. 534; Evans v. Meylert, 19 Pa. 410; Wallace v. Blair, 1 Gr. 75; Nace v. Hollenback, 1 S. & R. 540. Therefore a scire facias on a mortgage was consistently excluded from the operation of the act: Chambers v. Carson, 2 Wh. 365; for, unless the heir or terre-tenant be

made a party, he is not estopped from making defence on the merits in an action of ejectment by the purchaser: Wallace v. Blair, 1 Gr. 75.

4. A seeming exception, but only a seeming one, arose in the case of a judgment obtained against a decedent in his lifetime. The reason for the distinction is apparent, since in such cases the merits of the action were determined in the decedent's lifetime, and the representative into whose charge the personalty passed would be in a position to know if by any matter subsequent the judgment had been discharged: McMillan v. Red, 4 W. & S. 238. If § 34 were a rule of lien, and not a rule of action, that decision must have been the other way, for the lands were charged with no debt during the decedent's lifetime: McMurray v. Hopper, 43 Pa. 468; Middleton v. Middleton, 106 Pa. 252. Even where, prior to the passage of the act of 1834, a judgment had been obtained against the personal representative, under which, as the law then stood, the real estate could be taken and sold, a scire facias to the heirs was held necessary after the passage of the act: Benner v. Phillips, 9 W. & S. 16; Keenan v. Gibson, 9 Pa. 249; Warden v. Eichbaum, 14 Pa. 125; McGlaughlin v. McGlaughlin, 24 Pa. 22; Shearer v. Brinley, 76 Pa. 302. But any question that might yet remain should certainly be removed by the recent case of Mangan's App., 20 W. N. 257. In that case the claim was for unpaid purchase money and undoubtedly a lien, or a "charge" on land. Certainly, the lien of arrears of ground-rent is in no sense more a charge than that of unpaid purchase money.

5. Our second ground of objection is based on the well-settled principle which precludes a mortgagor, or one holding subject to a mortgage, from acquiring and setting up against the mortgagee a title paramount or hostile to the mortgage. Lippincott, the purchaser at the sheriff's sale, had at the time of the sale an estate as tenant by the curtesy, his wife being one of the heirs of John Ketcham. His purchase must be looked upon as his wife's purchase: Buchanan v. Duncan, 40 Pa. 82: Harris v. Insurance Co., 50 Pa. 349; Swisshelm's App., 56 Pa. 487. Such purchase must also be considered as made for the benefit of the co-tenants, the other heirs of Ketcham: Weaver v. Wible, 25 Pa. 272; Davis v. King, 87

Pa. 263; Duff v. Wilson, 72 Pa. 447. It is well settled that the owner of property subject to a charge cannot get rid of it by the purchase of a paramount or adverse title: Jones, Mort., § 680; Woodburn v. Bank, 5 W. & S., 448; Taylor v. Smith, 2 Wh. 436; Clark v. Martin, 49 Pa. 303; Rauch v. Dech, 116 Pa. 157.

*Mr. B. F. Fisher* and *Mr. F. Carroll Brewster*, for the defendant in error:

1. The personal estate being primarily responsible for the debts of a decedent, and the real estate descending to the widow and heirs, the mischief to be remedied by § 34, act of 1834, was to prevent the real estate from being swept away through claims which the heir would naturally presume would be paid out of the personal estate. But a very different principle and practice governs where the debt is already a fixed charge against the real estate, such as a mortgage, a judgment obtained in the lifetime of the decedent, a mechanics' lien and a ground rent: Taylor v. Young, 71 Pa. 81; Hare v. Mullock, 1 Miles 168; Chambers v. Carson, 2 Wh. 365; Tryon v. Munson, 77 Pa. 260.

2. Yet, higher in degree of lien and charge than the mortgage, the judgment in the lifetime of the decedent, and the mechanics' lien, is the ground-rent reserved out of the land: Cadwallader on Ground-rents, 63, 129; Robb v. Beaver, 8 W. & S. 126; Irwin v. Bank, 1 Pa. 349; Fassitt v. Middleton, 5 Phila. 196; Brown v. Johnson, 4 R. 146; Bantleon v. Smith, 2 Binn. 151. No logical reason can be assigned why the ground rent owner should be required to do more than a mortgagee. But if there had been any intention to charge other lands than that out of which the ground-rent was reserved, then the plaintiff would have brought himself within the act of 1834: McMurray v. Hopper, 43 Pa. 468; Gordon v. Correy, 5 Binn. 552.

3. While it is submitted that no reasoning can bring the proceedings upon a ground-rent reserved within the act of 1834, § 8 of the act of April 25, 1850, P. L. 571, in itself provides a full and complete remedy. The administrator of a grantee in a ground-rent deed is a proper party to an action of covenant after his death, but the judgment will be restricted to the

land: Gardiner v. Painter, 3 Phila. 365; Williams's App., 47 Pa. 307; Diese v. Fackler, 58 Pa. 109.

4. There is no view that can be taken of the purchase by Lippincott that can make him a trustee for the plaintiff; no personal relation between him and the plaintiff: Bowser v. Bowser, 82 Pa. 57. There is not a single case cited by the plaintiff but turned upon the elements of fraud connected with the transaction.

OPINION, MR. JUSTICE PAXSON:

This was an action of ejectment. Upon the trial below the defendant offered in evidence, as part of his title, the record of a sheriff's sale of the property upon a judgment recovered in an action of covenant upon a ground rent. The action was brought against the administrator of the original covenantor, and was for the arrears accruing since his death.

It is settled that the personal representatives of the covenantor may be sued for the breaches of the covenant in the ground-rent deed, occurring after his death, but the judgment will be restricted to the land bound by the covenant: Gardiner v. Painter, 3 Phila. 365; Quain's App., 22 Pa. 510; Williams's App., 47 Pa. 283. It was urged, however, that the proceedings upon the ground-rent were defective because there was no scire facias to warn the heirs as required by the act of February 24, 1834. The object of that act was to give the heirs notice of an attempt to charge a debt of a decedent upon his real estate in their hands, and it has no application where the testator in his lifetime has charged his real estate with the payment of the debt. In such cases the heirs take the real estate cum onere. It is true that Justice THOMPSON did say in McLaughlin v. McCumber, 36 Pa. 22, that "the requirement of the statute of 1834, that in order to charge the lands of the decedent as against the widow and heirs, they must be made parties to the judgment, is a rule without exception," yet this must be understood in connection with the facts involved in that case. There a judgment had been recovered against an executor upon a debt of his testator, and it was sought to charge his real estate with said debt without making his widow and heirs parties. · It may be said that, as to all such cases, there is no exception to the rule. A scire facias

upon a mortgage is not within § 34, act of February 24, 1834, requiring the widow and heirs or devisees of a decedent to be made parties to a suit against executors : Chambers v. Carson, 2 Wh. 365. The only effect of such omission is that, on the trial of the ejectment, they may make any defence they could have made to the scire facias : Wallace v. Blair, 1 Gr. 75.

The judgment upon this ground-rent was a judgment de terris, and the suit was as much a proceeding in rem as is a scire facias upon a mortgage. The administrator could not have been compelled to pay the money out of the personal estate, nor could it have been made out of any real estate other than the particular property upon which it was charged, and out of which the rent issued. It was a restricted charge. It was held in McMurray. v. Hopper, 43 Pa. 468, that " an unconditional revival of a restricted judgment, during defendant's lifetime, makes it a general lien on all his lands in the county ; but such revival after his death against his personal representatives only, simply continues the lien as originally restricted. To incumber his other real estate with the judgment, as against the widow and heirs, proceedings must be had against them under the provisions of the 34th section of the act of February 24, 1834."

It is true a judgment against a covenantor in a ground-rent deed is a general, unrestricted judgment, and the money may be made out of any of his property, real or personal, that can be found. So I apprehend a judgment against his executor or administrator for rent which accrued prior to his death could be collected out of his general assets, real or personal; yet, to charge it upon any real estate other than that out of which the rent issued, would require notice to the widow and heirs under the act of 1834, under the principle above cited in McMurray v. Hopper.

It is conceded that a scire facias upon a mortgage is not within the act of 1834. The reasons are equally strong for the exemption of a judgment upon ground-rent from its operation. A ground-rent is something more than a lien or even a charge ; it is an estate, and is bound by the lien of a judgment or mortgage equally with the land. The remedies for its collection are threefold, viz.: (*a*) The action of covenant upon the deed, (*b*) by distress, and (*c*) by re-entry. The last

two remedies are always in rem; the first is so (as in this case) for rent falling due after the death of the covenantor. No one, I presume, will contend that where the ground landlord proceeds to collect his rent by distress, or re-entry, that he must make the widow and heirs parties under the act of 1834. Nor do I see any stronger reason why he should make them parties when he attempts to collect it out of the property itself by execution. He is charging nothing upon the land of the deceased covenantor; he is merely enforcing a charge placed upon it by the decedent himself in the very inception of his title, which binds it in the hands of his heirs, and runs with the land forever, and in every change of ownership.

Judgment affirmed.

On February 24, 1888, the plaintiff's counsel filed a motion for a re-argument, submitting that the question arising upon the second assignment of error had not been decided, and that the weight of authority certainly seemed to be that one who holds subject to a mortgage cannot thus acquire title against the mortgagee; that the rule applied to tenants in common and to husbands interested uxoris jure, and that Rauch v. Dech, 116 Pa. 157, relied upon by the court below, was inapplicable. It was further submitted that the opinion filed upon the first assignment of error was not in accordance with the decision of Mangan's App., 20 W. N. 257, and that, consistently with the case cited, the word " charge " in the act of 1834, could only be interpreted as meaning " taken in execution," and as having no reference to lien.

OPINION, MR. JUSTICE PAXSON:

We are asked to grant a re-argument in this case. The principal ground upon which such motion is made is that in the opinion we did not discuss the second reserved question. From this fact the inference is drawn that we overlooked it. Such, however, was not the case. I did not discuss it because I was under the impression that it was practically abandoned at the argument. It was not discussed in the oral argument at bar, and was hardly alluded to, if it was alluded to at all, by either side. This is very frankly stated in the petition for re-argument.

We do not deem it essential, when we affirm a judgment, to discuss every question raised by the ingenuity of counsel, especially where such question is not pressed upon the oral argument. It would make our opinions of inconvenient length, burdensome to us, and more especially so to the members of the bar who are compelled to read them. In the case in hand I did not refer to the second question reserved, for the reason that the learned judge below had said all that I considered necessary in regard to it. I might well leave the matter here, but as the learned counsel appears to be under the impression that the views of the court below are unsound, and particularly that the case of Rauch v. Dech, 116 Pa. 157, has no application, I will add a few words to what the learned and able judge below has so well said.

This was an attempt to apply the familiar rule in equity, that when a vendor or mortgagor either sells or mortgages land which he does not own, and afterwards obtains the title thereto, he will not be permitted to set up this after acquired title to defeat his previous grant or mortgage, for this would be to permit him to perpetrate a fraud on his grantee or creditor. That the rule has no application to this case requires but a moment's consideration. The defendant bought the premises in question at a judicial sale for arrears of a ground-rent which antedated the mortgage. The effect of this was to discharge the lien of the mortgage. The defendant paid his own money and for all practical purposes was a stranger to the title. His only connection with the land prior to his purchase, as was said by the court below, was as husband of one of the tenants in common of a barren legal title, cast upon them by descent, and not reduced to possession or recognized by them in any way. It was among the admitted facts in the case " that when John Ketcham died his estate was insolvent, and this land was incumbered beyond its market value, and therefore the heirs did not enter into possession or take any steps to recognize their legal title." We entirely agree with the learned judge below when he said: " In the face of these facts, to hold, in an action, not by the other co-tenants, but by an adverse incumbrancer, that the defendant must be conclusively presumed to have bought as trustee for his wife, and therefore that he is remitted to her prior title ; that her title

inures to the benefit of all the co-tenants, and is therefore the title of the ancestor, and subject to the incumbrances due by him, would be directly contrary to the principle of Rauch v. Dech;" and, we may add, contrary to every principle of natural justice.

I have referred to this question thus briefly for the sole purpose of showing that it did not require a discussion. I desire to say that Mangan's Appeal, 20 W. N. 257, was not referred to in the opinion of the court for the reason that it was not considered to apply to this case.

The motion is denied.