Bowen, Appellant, *v.* A. R. Boyd
Enterprises, Inc., et al.

Argued January 26, 1937.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles M. Bolich,* for appellant.

*Harold A. Butz,* of *Butz, Steckel and Rupp,* for appellees.

OPINION BY MR. JUSTICE BARNES, April 12, 1937:

The plaintiff in this proceeding in equity seeks to have a third mortgage owned by her reinstated as a lien upon the mortgaged premises after it had been discharged by a foreclosure sale upon a prior incumbrance. Her prayer for relief is based upon the allegation that the foreclosure in question had for its primary purpose the discharge of her third mortgage, and was a fraudulent and collusive arrangement between the first mortgagee and the owner of the property.

It appears from the record that on March 9, 1930, the plaintiff and her husband, James K. Bowen, sold the property known as the Embassy Theatre, located at 28 North Ninth Street, Allentown, to the A. R. Boyd Enterprises, Inc., (referred to as Boyd Enterprises) a Delaware corporation, one of the defendants. The conveyance was made subject to two mortgages which had been created by plaintiff's husband at a time when he held title to the premises. The first mortgage was in the principal sum of $125,000 and was held by James W. Fuller, while a second mortgage of $50,000 was owned by the Lehigh Valley Trust Company. The payment of these mortgages was assumed in writing by the purchaser. The third mortgage here involved was given by Boyd Enterprises to the plaintiff, at the time of the con-

veyance, to secure a balance of $44,000 of the purchase price for the property. Payments on account had reduced the principal sum of this mortgage to $34,566.38 at the time of this suit.

Shortly after the transfer of the property, James W. Fuller, the owner of the first mortgage, died. His executors, requiring funds for the payment of taxes, made formal demand in writing for the payment of the mortgage. Boyd Enterprises, although it endeavored to raise the money to pay off the mortgage, was unable to do so, and foreclosure proceedings were instituted in August, 1931, by the executors of the Fuller estate. In due course the property was exposed to public sale, and, no bidders appearing, it was sold by the sheriff to Fuller's executors, as the plaintiffs in execution. Title was taken in the name of a nominee for the benefit of the estate. James K. Bowen, who had been notified of the impending foreclosure and sale, and advised to protect the third mortgage, offered on behalf of his wife to purchase the property from the executors and to pay them from the receipts of the theatre, but this offer was rejected. The executors sold the property to a newly organized Pennsylvania corporation, called the Embassy Corporation of Allentown, to which, on January 18, 1932, title to the property was conveyed. Contemporaneously with the conveyance, Embassy Corporation executed a bond and mortgage upon the property to the Fuller Estate, in the sum of $125,000, and, upon demand of the estate, Boyd Enterprises joined in the execution of the bond. As further consideration it paid to the executors the costs of the foreclosure and all interest accrued upon the original first mortgage.

From the testimony it appears that the officers, directors and shareholders of Boyd Enterprises, and Embassy Corporation are the same persons, and that A. R. Boyd is the dominating factor in each company. However, it is undisputed that when Embassy Corporation was formed, A. R. Boyd loaned to it the sum of $25,000, from

which the cash consideration for the conveyance from Fuller's executors, the expenses of the incorporation, and the working capital initially required to operate the theatre were supplied.

The plaintiff asserts that the foreclosure proceeding was the result of prearrangement and collusion between the executors of the Fuller estate and the officers of Boyd Enterprises to divest the lien of her third mortgage, and with respect thereto such foreclosure is fraudulent and void. She charges that Embassy Corporation holds title to the property for the benefit of Boyd Enterprises, and contends that its separate corporate identity should be disregarded, so that her lien may be reinstated with the same effect as if title were actually in Boyd Enterprises.

The court below found that the foreclosure of the mortgage and the conveyance to Embassy Corporation were made in good faith and were without fraud or collusion. Plaintiff appeals from the final decree dismissing the bill.

It is clear that the vital question in this appeal is whether the defendants were parties to a fraudulent and collusive scheme to deprive plaintiff of her rights as a junior lien holder. The importance of this phase of the case was recognized in the proceedings in the court below, and to us it seems that the utmost latitude was there granted to plaintiff to establish by proofs her allegation of actual or constructive fraud on the part of the owner of the property and the estate holding the first mortgage. This burden the plaintiff failed to sustain, and the learned Chancellor concluded that the testimony was insufficient to warrant any finding of fraud, collusion or conspiracy.

From our review of the record we are satisfied that the findings made by the court are justified by the evidence, in fact it would be difficult to sustain upon this record a finding to the contrary. There is afforded indubitable proof that the foreclosure proceedings were

adverse to the present defendant which then owned the property, and that they were instituted in good faith "for the sole benefit of the estate of James Wheeler Fuller." The court has found no evidence prior to the sheriff's sale of any negotiations between the parties in interest "whereby the first mortgage was to be foreclosed for the purpose of discharging the lien of complainant's mortgage or whereby any assurances were given that respondent would be given the opportunity to repurchase the property." These findings of the Chancellor, sustained as they are by the evidence and confirmed by the court in banc, have the effect of a jury's verdict and are binding upon us: *Glenn v. Trees,* 276 Pa. 165; *Pusey's Est.,* 321 Pa. 248; *Weiss v. First Nat. Bank of Scranton,* 321 Pa. 365.

The plaintiff had ample opportunity to protect her lien at the sheriff's sale. When she became third mortgagee she knew that her junior lien might be lost by inability to meet the demands of prior lienholders. When no cash purchaser appeared at the sheriff's sale, and the property was sold to and title acquired by the first mortgagee, the new owner had the right thereafter to sell the property to whatever purchaser seemed to it most desirable, whether the purchaser be the original mortgagor, or a new corporation comprised of the same interests as the original mortgagor. Hence it is immaterial whether Embassy Corporation was a mere tool or device, either for Boyd Enterprises, or A. R. Boyd individually. The identity of the purchaser with the original mortgagor would become important only on a showing of bad faith. Here, as we have said, the crucial question is not whether Embassy Corporation, the purchaser, is identical with, or diverse from Boyd Enterprises, the mortgagor, but whether the Fuller executors and the Boyd interests were in collusion to divest the liens of junior encumbrances.

The decisions of this Court in *Rauch v. Dech,* 116 Pa. 157, and *Rushton v. Lippincott,* 119 Pa. 12, hold that the

lien of a junior mortgage discharged by judicial proceedings is not revived when the mortgagor by conveyance from the purchaser at the sheriff's sale reacquires title to the mortgaged premises. The sale divests the liens upon the property, and when the purchaser subsequently conveys the premises to the former mortgagor-owner, the latter takes the same title which the purchaser acquired at sheriff's sale.

It is not an unusual circumstance that a mortgagor-owner whose property has been sold at sheriff's sale may subsequently reacquire it from his mortgagee who purchased it at the sale. It may be that the discharge of the junior liens and encumbrances by the sale has afforded the possibility of refinancing a property theretofore overburdened with debt. Such fact does not of itself taint the transaction with fraud and collusion as to junior liens discharged by the sale. It presents a different situation from that in *Kennedy v. Borie,* 166 Pa. 360, which is relied upon by plaintiff. There a purchaser acquired title to the property subject in express terms to two existing mortgages. Subsequently there was a foreclosure upon the first mortgage, and the purchaser became the successful bidder at sheriff's sale and received a deed for the property. He then claimed to hold the property divested of the second mortgage. A decree was entered in effect reinstating the mortgage. However, there was evidence of negotiations between the owner and the first mortgagee prior to the sheriff's sale; there was concealment of the proposed sale whereby the junior mortgagee was prevented from protecting his lien; and there was positive proof of a combination to destroy the second lien. Such is not the case now before us.

There is no merit in the contention of plaintiff that we should apply to this case the familiar rule in equity of estoppel by deed, that when a vendor or mortgagor either sells or mortgages land which he does not own, and afterwards acquires title thereto, he is not per-

mitted to set up this after-acquired title to defeat his previous grant or mortgage, for this would permit him to perpetrate a fraud upon his grantee or creditor: *Clark v. Martin,* 49 Pa. 299; *Calder v. Chapman,* 52 Pa. 359; *Rushton v. Lippincott,* supra; *Gallagher v. Stern,* 250 Pa. 292. The rule has no application to this case, for here a valid mortgage has been lost rather than a defective one perfected. Hence, there is nothing present against which an estoppel can work.

For the reasons stated, we feel that plaintiff has established no right to the relief which she seeks, and the court below properly dismissed the bill.

Judgment affirmed. Costs to be paid by appellant.