PAUL J. SEMMES, plaintiff in error, vs. SAMUEL BOYKIN, adm'r, and others, defendants in error.

[1.] A payment by the debtor to the creditor is, when there are more debts than one, to be applied to that debt to which, the debtor directs it to be applied, if he makes any direction.

[2.] In the eye of equity, all creditors are equally meritorious. Consequently, *if there are several funds of the debtor, and there are some creditors hav-*

ing liens on one fund, and some, on another fund, and there is one creditor having a general and superior lien on all the funds, equity will not permit this creditor, to take the whole of his pay, out of any one of the funds, but will compel him to take it, *pro rata*, out of all of the funds.

[3.] Courts may require amendments to sworn bills, to be themselves sworn to.

In equity, from Muscogee county. Decision by Judge WORRILL, at November Term, 1858.

This was a bill filed by Paul J. Semmes, against Samuel Boykin, administrator of Narcissa Boykin, deceased, Francis M. Brooks, Sheriff of Muscogee county, and Robert S. Hardaway and others, judgment creditors of Edward T. Taylor.

The allegations of the bill, are substantially as follows:

That Paul J. Semmes held claims to the amount of $15,-000 against Edward T. Taylor, and on the      day of September, 1856, Taylor gave Semmes a mortgage on a house and lot in the city of Columbus, to secure the payment of said amount.

And at the May Term of the Superior Court of Muscogee county, 1857, Semmes got a judgment of foreclosure on said mortgage; and on the 1st Tuesday in Nov. 1857, the said house and lot so mortgaged was sold by the Sheriff and brought about the sum of $4,000, over and above costs, which sum is now in the Sheriffs hands for distribution.

At the August Term of the Superior Court of said county, 1853, one Narcissa Boykin, obtained a judgment against said Edward T. Taylor for $2,000 besides interest and costs, and on this debt said Taylor was only security, and one John C. Leitner was the principal; said *fi. fa.* is now in the hands of the Sheriff, claiming the money raised on the sale aforesaid.

The said Narcissa Boykin is dead and Samuel Boykin is her administrator. The said Jno. C. Leitner is also dead, and Hines Holt is his administrator.

Leitner in his lifetime was indebted to said Boykin in another considerable sum outside of the said $2,000 debt ;

and to secure the payment of this other sum to the said Boykin, the said Leitner gave to said Boykin a mortgage on his interest in a manufacturing establishment in Columbus. The amount now due on this claim by Leitner's estate, plaintiff, Semmes, cannot prove without a *discovery* from Holt, the administrator. Leitner has been dead five or six years, and his estate is not yet administered. The administrator of Leitner represents his estate as being unable to pay its debts; but of its true condition plaintiff can prove nothing, without a *discovery* from Holt the administrator. The interest of Leitner in said factory has not been sold under said mortgage, nor has it been sold by the said administrator.

About the    day of    in the year 1856, Holt, the administrator of Leitner, had in his hands the sum of $4,000, and not wishing to hold the same, made a deposit of it in the hands of the said Narcissa Boykin, to be applied to the payment of Leitner's indebtedness to her and in such manner as the law would appropriate it.

At the August Term of the Inferior Court of said county, 1857, Robert S. Hardaway, Henry Lockhart and others, obtained common law judgments against said Edward T. Taylor, amounting in all to about $1,500; and they have their *fi. fas.* now in the Sheriff's hands claiming said money. On the 1st Tuesday in November, 1857, several lots of land in said county, were sold by the Sheriff, as the property of said Taylor, under the old *fi. fa.* of Boykin, which land sold for about $1,000 and that sum is also now in the Sheriff's hands for distribution.

When Boykin obtained her judgment against Taylor in 1853, and since that time, said Taylor owned and possessed an interest in the Taylor Gin Factory in Columbus, which interest is sufficient to satisfy the $2,000 *fi. fa.* of Boykin, and is subject to the same; and this is the only claim to which said gin factory is subject; and the claims of Semmes, Lockhart, and others, cannot reach it.

The bill prays that Samuel Boykin, administrator be enjoined from receiving the money in the hands of the Sheriff, in satisfaction of the said execution, and that he be compelled by the decree of the Court, to proceed to collect said execution out of the estate of Leitner; that the said mortgage on the estate of Leitner be foreclosed, and that Boykin be enjoined from applying the said four thousand dollars, placed in the hands of his intestate by the administrator of Leitner, (Holt,) to the payment of said mortgage debt, but that the same be applied to the satisfaction of the execution against Taylor. That if said execution be not thus satisfied, that then the money in the Sheriff's hands, raised from the sale of Taylor's property, not embraced in complainant's mortgage, may be applied towards the payment of said execution held by Boykin against Taylor, in preference to the junior judgments against said Taylor; that the Sheriff and all said creditors be enjoined until the further order of this Court, &c.

Boykin, Hardaway, and Lockhart, demurred to this bill, which demurrer, after argument, the Court sustained and dismissed the bill as to said parties. To which decision complainant excepted.

Complainant then moved to amend his bill by adding thereto, " the allegations appended to the same, bearing date this (that) day." Defendants objected to this amendment on the ground, that the same was not sworn to. The Court sustained the objection, and refused the motion to amend.

To which decision counsel for complainant excepted.

INGRAM & RUSSELL, represented by B. HILL, for plaintiff in error.

DOUGHERTY, and E. A. NESBIT, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

The Court below sustained the demurrer to the bill. The question, therefore, is, was there equity in the bill?

It may be assumed, that there was equity in the bill, if the facts stated by it, were such as to show, that Semmes had the right, to compel Boykin to seek satisfaction of his *fi. fa.* in whole or in part, out of some of the funds other than the fund raised by Semmes under his mortgage. Those funds were the $4,000 paid by Holt as administrator of Leitner, to Mrs. Boykin; the money raised by the Boykin *fi. fa.* itself; the money raised by the other *fi. fas*; the interest of Taylor in the gin factory.

Were the facts of the bill, then, such as to show, that Semmes had this right?

[1.] First, were they sufficient to show, that he had the right to compel Boykin, to seek satisfaction of his *fi. fa.*, in whole or in part, out of the $4,000 paid to his intestate, Mrs. Boykin, by Holt, as the administrator of Leitner?

At the time when Holt thus paid the $4,000 to her, she held two debts against his intestate, Leitner, viz: one, a debt against Leitner as principal, and Taylor as surety, it being the debt on which the Boykin *fi. fa.* aforesaid against Taylor, is founded; the other, a debt secured by a mortgage on Leitner's interest in the Coweta Falls Manufacturing Company. It is admitted, and is no doubt true beyond question, that if, when Holt paid this money to her, he directed her to apply it to the satisfaction of the former debt, in whole or in part, it was her duty so to apply it.

Now, he did, in fact, give this direction. The allegation in the bill, is, that he placed this sum, in her hands, "for the express purpose of being applied to the satisfaction of the said debts of the said Leitner, due to the said Boykin, one of them being, the same debt upon which, the said *fi. fa.* was issued against the said Taylor." Consequently, it was

her duty to apply the sum, in *part*, to the payment of the former debt; and such an application of the money, if made, would, *pro tanto*, be a satisfaction of the *fi. fa.* against Taylor, as he was only a surety for the debt.

What part of the $4,000, was it, that was to be so applied? Doubtless, a part proportioned to the part to be applied to the mortgage debt. What then was the part to be applied to the mortgage debt? That depended on a question, viz: whether in stating the proportion, the mortgage debt was to be taken at its full amount, or taken only at the balance of that amount remaining after the mortgaged property had been applied to it. This is a question, which it is not necessary to determine, as, whichever of the two things it be that is true, it is certain, that *some* part of the $4,000, was to be applied to this debt on which Taylor was surety; and, if any part was to be so applied, that gave Semmes an equity. Consequently, we do not determine the question. We think, it proper, however, to say, that we incline to the opinion, that the balance of the mortgage debt was all that was to be taken in stating the proportion, for an Act of 1845, declares, "that in the payment of the debts of any deceased person or persons, no debts secured by mortgage, shall be entitled to any priority over any other debt of equal degree, except so far as relates to the property mortgaged;" (*Cobb* 297,) and we rather suppose, that permitting the whole mortgage debt, first to share with the other debt in the $4,000, and then, to appropriate to itself, the whole of the mortgaged property, would be a violation of this act.

Secondly, were the facts in the bill, sufficient to give Semmes the right to require Boykin, to take any part of his pay of the old *fi. fa.*, out of the other money in the hands of the Sheriff, viz: the money on which the judgments younger than Semmes's mortgage, had a lien? We think they were.

[2.] In the eye of equity, all creditors are equally meritorious, and, therefore, equity, if left to itself, makes no discriminations among creditors, but puts them all on the same

footing.　Semmes, then, and these younger judgment credi-tors, must be permitted to stand on the same footing, with respect to the Boykin *fi. fa.* which is older than his mort-gage, and, older than their judgments.　Consequently, Semmes has the right to require, that this *fi. fa.* shall not take the entire pay of what may remain due on it after the pro-per part of the Leitner $4,000 has been applied to it, out of the fund raised by his mortgage, but shall take a part of such pay, out of the fund on which the younger judgments have a lien; he has the right to insist, that these two funds shall contribute, proportionately, to the satisfaction of such balance due on the Boykin *fi. fa.*

The result of what has been thus far said, is, that there was, in our opinion, equity in the bill in two respects; first, an equity to compel Boykin to take part satisfaction of his *fi. fa.,* out of the $4,000 paid by Holt to Mrs. Boykin; second-ly, an equity to compel him to take part satisfaction, out of the money on which, the younger judgments had a lien.

Thirdly, were the facts in the bill sufficient to give Semmes the right to require Boykin, to go first on the interest of Tay-lor in the gin factory, for satisfaction of the old *fi. fa ?* And, we think, that they were not.

[3.] It is obviously more advantageous to Boykin, on several accounts, to let him take satisfaction of his *fi. fa.,* out of ready money, (the fund in the hands of the Sheriff,) than, to send him to raise a sum out of Taylor's property, from which to get the satisfaction.　What equity has Semmes to ask, that Boykin shall be compelled to forego this advantage, which the law gives him ?　We know of none.　The most that Semmes could ask, would seem to be, that Boykin should be compelled to transfer to him, the *fi. fa.,* on his paying Boykin what was due on it, so that he, Semmes might, if he chose, try to make the money due on the *fi. fa.,* from the in-terest of Taylor in the gin factory.

So much for the demurrer.　We think the Court erred in not overruling it.

The bill was a sworn bill on which, an injunction had been granted. The offered amendment, was, doubtless, offered as an amendment to warrant the continuance of the injunction. Such an amendment ought, we think, to be sworn to. Certainly to require it to be sworn to, is no abuse in the Court of the discretion it has, as to amendments.

We see no error, then, in the refusal to admit the unsworn amendment.

Judgment reversed.