FEDERAL LAND BANK OF COLUMBIA *et al. v.* BANK OF LENOX.

No. 13640.   MAY 17, 1941.   ADHERED TO ON REHEARING, JUNE 20, JULY 17, 1941.

546

A. L. *Parrish*, G. *Stokes Walton*, and *Harry D. Reed*, for plaintiffs.

H. L. *Jackson* and *Franklin & Eberhardt*, for defendant.

JENKINS, Justice. ■ As to the motion to dismiss the writ of error, the Code, § 6-901, requires that a bill of exceptions "shall specify plainly the decision complained of and the alleged error." The instant case does not fall within the rule in *Greenfield* v. *Harvey*, 191 *Ga.* 92 (11 S. E. 2d, 776), where it was held that a mere "statement in a bill of exceptions, that 'plaintiff excepts to said verdict and judgment as being contrary to law' is not a valid assignment of error, and will not be considered by this court;" and that "by analogy this rule applies in a case where there is no verdict, but only a judgment rendered upon a submission to the judge without a jury to pass on all questions of law and fact." See also, to the same effect, *Groover* v. *Inman*, 60 *Ga.* 406 (5); *Fidelity & Deposit Co.* v. *Anderson*, 102 *Ga.* 551 (28 S. E. 382); *Rodgers* v. *Black*, 99 *Ga.* 142 (25 S. E. 20); *Newberry* v. *Tenant*, 121 *Ga.* 561 (49 S. E. 621); *Carmichael* v. *Mobley*, 50 *Ga. App.* 574 (178 S. E. 418), and cit. The instant exceptions are not limited, as in the *Greenfield* case, to a statement that the judgment is "contrary to law," but sufficiently set forth the decision, and the error complained of, and the grounds of complaint. While, under the mandate of the Code, the unsuccessful party must plainly specify the decision complained of and the alleged error, it is not the purpose of the law to require that he shall seek to demonstrate in his bill of exceptions the incorrectness of the ruling.

■ It is the general rule that a sale under a regularly exercised power in a security deed or mortgage is equivalent to a foreclosure proceeding, and not only extinguishes the right of redemption, but divests all junior mortgages and other junior incumbrances on the property. *Mutual Loan & Banking Co.* v. *Haas*, 100 *Ga.* 111, 115, 116 (27 S. E. 980, 62 Am. St. R. 317); *Seymour* v. *National Building & Loan Asso.*, 116 *Ga.* 285, 286 (42 S. E. 518, 94 Am. St. R.

131) ; *Carrington* v. *Citizens Bank of Waynesboro,* 144 *Ga.* 52 (3) (85 S. E. 1027) ; Scott *v.* Paisley, 271 U. S. 635 (46 Sup. Ct. 591, 70 L. ed. 1123), and cit. If a surplus remains after paying the senior claim, it is the general rule that the rights of junior claimants are limited thereto. But these rules are subject to recognized exceptions. The Code, § 29-111, provides that "The maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof. He is estopped from denying his right to sell and convey." This principle applies to mortgages as well as deeds. *Hill* v. *O'Bryan,* 104 *Ga.* 137 (2), 143 (30 S. E. 996), and cit.; *Thomas* v. *Hudson,* 190 *Ga.* 622 (3), 627 (10 S. E. 2d, 396), and cit. Accordingly, there can be no question as to the proposition, that, where a mortgagor creates a lien on property when no title exists in him, or where his title is subject to a superior lien, and there is an express or implied representation by the mortgagor whereby he asserts the priority of the junior mortgage, he would be estopped from buying in the property at a sale under the first lien, so as to divest such junior mortgagee. The same rule of estoppel would apply with equal force where, under such circumstances, a third person buys in the property at a sale under the first lien and conveys it to the mortgagor. In such a case the maker of the junior mortgage, by virtue of his untrue express or implied representations, would plainly be estopped from thus stripping the property of the junior mortgage, which he had thus induced another to accept. These principles form part of the doctrine of equitable estoppel or estoppel in pais, and are founded upon actual or constructive fraud and the general principles of morality and fair dealing. 19 Am. Jur. 640-643, 646, 647, 657, §§ 42, 48, 53, et seq., and cit.

The doctrine of estoppel, however, is not thus circumscribed or limited to cases where there have been false and fraudulent representations by the mortgagor as to the validity of his title or as to the professed priority of what in point of fact may have constituted only a second lien. This may arise under an extension of the rules of equitable estoppel or estoppel by deed. Code, §§ 29-111, 38-114; *Thomas* v. *Hudson,* supra, and cit.; Stewart *v.* Anderson, 10 Ala. 504, 508; Stiger *v.* Malone, 24 N. J. Eq. 426, 429; Tompkins *v.* Halstead, 21 Wis. 119; Hilton *v.* Bissell, 1 Sandf. Ch. (N. Y.) 409; 19 Am. Jur. 603, 606, 617, 657.

Accordingly, it has been held by this court, in *Bowlin* v. *Hemp-*

*hill,* 180 *Ga.* 435 (179 S. E. 341), that "where the grantor in a first security deed reacquired the property by purchasing the same at a sale under a power contained in such deed, a junior security deed made to another by the same grantor immediately attached as a first claim upon the property, and constituted an encumbrance thereon as against a subsequent grantee of such purchaser, *notwithstanding the second deed may have showed upon its face that it was a junior deed.*" (Italics ours.) To the same effect, see *Perkins* v. *Rhodes,* 192 *Ga.* 331 (15 S. E. 2d, 426), in which this principle of estoppel is plainly recognized as applicable to a transfer of a bond for title as security, where the debtor reacquired the property from the purchaser at a sale by the creditor holding the legal title. See also *Caffey* v. *Parris,* 186 *Ga.* 303, 309 (197 S. E. 898); *Horton* v. *Johnson,* 187 *Ga.* 9, 12 (199 S. E. 226), which cite with approval the *Bowlin* case. While there were two dissents in the *Bowlin* case, and the basis of the dissent is not stated, it is manifest from an examination of the *Williams* case, cited by the minority, that the dissent was based, not upon a disagreement with the general rule of law as stated by the majority in the *Bowlin* decision, but because, as shown both in the *Bowlin* case and the *Williams* case cited, there was a provision in the junior conveyance that it was made "subject to" the senior conveyance. It seems thus clearly indicated that, had the deed in the *Bowlin* case sought by its language, as in the instant case, to convey the entire fee, with a mere recital of the prior incumbrance, instead of having conveyed the property "subject to" the rights of the senior grantee, those Justices who dissented in the *Bowlin* case would not have been impelled so to do. It might well be argued that where a conveyance by its terms is made "subject to" a previous incumbrance, this must be taken as purporting to be, not a full conveyance, but a restricted conveyance, and as equivalent to no conveyance at all in so far as the interest covered by such previous incumbrance is concerned. It is a different thing, however, where, instead of making a conveyance "subject to" a previous outstanding lien or conveyance—especially so where, as in this case, an unlimited warranty is made,—the only reference to the previous incumbrance is a mere recital of its existence. Not only is it here true that the language of the instrument actually purports to convey and warrant the full title, but the Code, § 85-503, declares that "every convey-

ance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance." See, in this connection, *Ralston* v. *Field,* 32 *Ga.* 453 (5) ; *Richards* v. *East Tenn., Va. & Ga. Ry. Co.,* 106 *Ga.* 614 (4), 628 (33 S. E. 193, 45 L. R. A. 712). The deed to Bank of Lenox merely ·made proper mention of the existence of a prior mortgage deed. In no wise did it indicate that an estate less than the fee, which the language purported to convey, was what was really intended to be conveyed ; nor, as was true in the case cited in the dissent in the *Bowlin* case, did it contain any words having the legal effect of *limiting* the conveyance to less than the fee, which had been clearly expressed.

Where a deed otherwise purports to convey the fee, and contains no words such as would impose a limitation as to the quantum of the estate conveyed, a clause which does nothing more than inform the grantee that there is a prior mortgage or security deed on the property, and states that it is understood and agreed that such is the case, can not properly be construed as cutting down the quantum of the estate sought to be conveyed. The fact that the deed disclosed that the grantor was purporting to convey a greater estate than was in fact presently owned would not and could not nullify the language of the full and absolute conveyance as actually made. In other words, where the language of the deed purports to convey and warrant the full and absolute title, the fact that only the then owned equity of redemption may have been all the title which at that time could and did *pass,* would not change the legal effect of the language of the conveyance itself. Under such language, the grantee not only immediately took all title that the grantor then owned, but under such an instrument and in accordance with the Code he could await the time and tide of future events so as to thereafter appropriate all additional title that the grantor might subsequently acquire.

It can not reasonably be said that this interpretation would render the clause as to the prior security deed meaningless. It needs but be considered that we have in this State a law against cheating and swindling, and a person of reasonable prudence, in giving a second security deed, might wish it stated for his protection that a prior security deed or mortgage was in existence, and that the other party so understood. Persons have been convicted in this

State for fraudulently misrepresenting the condition of their title. See Code, §§ 26-7401, 26-7410, 61-9901; *Holton* v. *State,* 109 *Ga.* 127 (34 S. E. 358); *Crawford* v. *State,* 117 *Ga.* 247 (43 S. E. 762); *McElmurray* v. *State,* 56 *Ga. App.* 392 (192 S. E. 641), and cit.; *Morse* v. *State,* 9 *Ga. App.* 424 (71 S. E. 699).

As was stated in *Perkins* v. *Rhodes,* supra, it has long been recognized that the rules of estoppel are much broader where the relation is one of mortgagor and mortgagee, where duties of the mortgagor as debtor or as continuing in possession of the property remain, than where the relation is one merely of vendor and vendee, where no duty by the vendor remains unless undertaken by covenant in his deed. The relation of mortgagor and mortgagee has been thus likened to that of landlord and tenant, where the relationship itself precludes the tenant from disputing the title of his landlord. 58 A. L. R. 357, 358, 391, note and cit.; 45 Am. D., note and cit.; Stewart *v.* Anderson, supra, quoting Powell on Law of Mortgages, 190. The security deed conveying full title to the Bank of Lenox, even had there been no unlimited warranty of title, clearly implied that the grantor would pay his own prior indebtedness and thereby clear the incumbrance, and not that he was turning the property loose on such second grantee with the burden on the latter to pay the debt in order to obtain a good title to what had been conveyed. The instrument contained nothing to show that the grantor expected to be relieved of this obligation, or that the second grantee intended to assume it, or even to have the burden of discharging it in order to protect his title, as between the immediate parties. Construing the instrument in its entirety so as to give effect to the intention of the parties, as of course we must do, it would seem that the very purpose and effect of the broad and unrestricted language of the conveyance, with an unlimited and unrestricted warranty of the title, was to provide for the exact situation which actually arose in the instant case; that is, where the grantor afterwards reacquired title to the property stripped and free of the prior incumbrance. In such a case, how could it be said that when one induces another to part with his money on the faith of a junior security deed, especially with a full and unlimited warranty of title, and afterwards reacquires the property freed of the previous recited lien, he should then be permitted to hold it against his own grantee merely because he may have

very properly recited the existence of the prior lien as being a fact at a time when in point of fact it was a fact.

The rule which we have just discussed would manifestly have no application to a quitclaim deed merely renouncing or releasing title. *Morrison* v. *Whiteside,* 116 *Ga.* 459, 462 (42 S. E. 729). Nor would the rule have application where a conveyance is limited to such right, title, and interest as the grantee has in a designated estate or premises. *White* v. *Stewart,* 131 *Ga.* 460 (2), 464 (62 S. E. 590). Nor would it have application where the conveyance on its face was of a bare contingency or possibility. *Dailey* v. *Springfield,* 144 *Ga.* 395 (1, *a*) (87 S. E. 479, Ann. Cas. 1917D, 943). Nor, as has already been discussed, would it be necessary to adjudicate that the rule would have application where the conveyance does not purport to cover the full title, but is made "subject to" a designated prior estate or claim. *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (3) (36 S. E. 927); *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416 (117 S. E. 247); *Smith* v. *Farmers Bank,* 165 *Ga.* 470 (141 S. E. 203); *Bowlin* v. *Hemphill,* supra. While, as stated, in none of the instances just mentioned would the rule we have announced be given application, this does not mean that the decisions even by implication could be taken as authority against the rule. On the contrary, it might be observed that the decisions which take the cases out from under the operation of the rule, because of their particular facts, would seem to carry the implication or negative pregnant that but for such particular facts, and under ordinary circumstances, the rule would have been applied.

The decision in *Beckcom* v. *Small,* 152 *Ga.* 149 (108 S. E. 542), did not deal with the question here involved. In that case, whatever quantum of estate the language of the second deed might have been taken to convey, no adjudication was made upon such question, since in that case the grantee herself sought only to claim and subject to her lien the equity of redemption. This is all that she saw proper to claim, and this is all that she advertised for sale. In the *Beckcom* case, since the superior lien continued to remain unsatisfied, the equity of redemption was all the title which had actually *passed* and *accrued* unto the grantee, and consequently was all that she sought to sell.

The question here under. discussion might be brought into confusion and doubt if we should lean too heavily on outside authori-

ties, some of which are admittedly in conflict with others, and also in conflict with previous decisions of this court—even contrary. to our own Code, § 29-111; and while some decisions of other jurisdictions are cited in this opinion as persuasive authority, yet if all decisions by other courts should be laid aside, we could not reach any other conclusion than we do in this case.

There are cases of foreign jurisdictions, where, as here, the conveyance was absolute and conveyed the property itself, which have applied the doctrine of estoppel, even though the maker of the junior mortgage acquired title, not at the sale under the senior mortgage, but from the purchaser at such sale. In other cases, the principles of estoppel and warranty have been blended. In still other cases, while refusing to apply the doctrine of estoppel in favor of the junior mortgagee, his rights have been held superior by reason of a covenant of warranty in his mortgage. In none of the cases, however, has the junior mortgage been held extinguished or subordinate to the rights of the mortgagor and his privies, where the instrument contained a covenant of unlimited warranty.

The status of a junior mortgagee, where the mortgagor reacquires title from the purchaser at a sale under a senior mortgage, has long troubled the courts, and there is a strange dearth of decisive authority on the subject. In 3 Jones on Mortgages (7th ed.), 602, § 1887, it is said: "Whether the mortgagor would stand in any better position as regards the subsequent incumbrance, if, instead of purchasing directly under the power, the estate had been sold under the power to a stranger and subsequently purchased from such stranger by the mortgagor, is a question raised but not decided in the case last cited." (Otter v. Vaux, 6 De Gex, MacNaughton & Gordon, 638, 643, 43 English Rep. Reprint, 1381.) In that case, after following an earlier English decision, Toulmin v. Steere (3 Merivale, 210, 36 English Rep. Reprint, 81), and holding that where a mortgagor gave two mortgages and bought in the property himself at a sale under the senior mortgage, his purchase would not defeat the junior mortgage, the court raised the question: "Whether this would be the case if the estate has been sold to a *stranger* and subsequently purchased from such stranger by the mortgagor—quære?" No decision was made thereon.

The case of Martin v. Raleigh State Bank, 146 Miss. 1 (111 So. 448, 51 A. L. R. 442), seems almost identical in all respects as to

the question under discussion. The principles of estoppel were there specifically applied; and it was held that where a property owner gives a deed of trust, reciting on its face that it is a second deed of trust, and where the property is purchased by a third person at a foreclosure sale under the first deed of trust, and through mesne conveyances is reacquired by the grantor, the title so reacquired inures to the beneficiary of the second deed of trust. While the opinion in that case referred to a statute of Mississippi, whereby "a conveyance without warranty operates as a quitclaim and release," passes all interest that the grantor has in the land conveyed, and "estops the grantor and his heirs from asserting a subsequently acquired adverse title to the land conveyed," that case did not involve a quitclaim deed, but, as here, two loan deeds. Our Code, § 29-111, providing that "the maker of a deed can not subsequently claim adversely to the deed under a title acquired since the making thereof," is identical in effect, save that in Mississippi this rule of estoppel is extended so as to also cover quitclaim deeds. This is not true under our statute or the Georgia decisions interpreting it. In this respect alone do the Georgia and Mississippi rules appear to be different. Raleigh State Bank v. Williams, 150 Miss. 766 (117 So. 365, 367), did not involve a contest between the debtor or his privy and the junior lienholder, but was a contest between the superior title of the purchaser at a sale under the senior deed and the junior lien. The case is therefore not in point; but the ruling in the previous Martin case was there referred to with approval.

In California, a statute existed similar to our own Code, § 29-111, as to after-acquired property. Applying apparently the principles of estoppel, the Court of Appeals of that State held that, although under the general rule the foreclosure of a senior deed of trust extinguishes a junior mortgage lien, the mortgagor's acquisition of title through a deed from the purchaser will revive the junior lien; and that the reason for the rule of extinguishment "would seem not to apply as to the mortgagor acquiring the title from foreclosure of the first mortgage, whether he acquired title directly . . or indirectly as the grantee of a third party foreclosure-purchaser." See also Jensen v. Duke, 71 Cal. App. 210 (234 Pac. 876). Holding to like effect are Stone v. Morris (Ark.), 7 S. W. 2d, 796; Barberi v. Rothchild, 7 Cal. 2d, 537 (61 Pac. 2d,

760). And see 111 A. L. R. 1285, 1288; 58 A. L. R. 345, 409; notes and cit.

Also applying the doctrine of estoppel, in addition to the rules of warranty, where the senior mortgagee bought in the property at a sale under its mortgage, and then sold it to the wife of the mortgagor, who had joined with him in executing the instrument with its covenant of warranty, the New Hampshire Supreme Court, in Parsons v. Little, 66 N. H. 339 (20 Atl. 958), held that, in a contest with the junior mortgagee, his mortgage "revived" by the "purchase and possession" of the wife, executing the warranty; that her title "inures to the benefit of the [mortgagee] by way of estoppel;" and that, "having subsequently acquired title, she is estopped by her covenants from setting it up against the [mortgagee], to whose benefit her after-acquired title must inure." See also Home Owners Loan Corporation v. Guaranty Title Trust Co., 168 Tenn. 118 (76 S. W. 2d, 109). There are other decisions, closely analogous to the present case, where the mortgage contained a covenant of warranty against all persons, although the mortgage recited the existence of a superior mortgage, and the mortgagor reacquired the property from the purchaser at a sale under the first mortgage. In these it was held, that, under the warranty and the principles of estoppel, the junior lienholder would prevail over the mortgagor and his privies. Merchants National Bank of Fargo v. Miller, 59 N. D. 273 (229 N. W. 357, 359) ; Baird v. Chamberlain, 60 N. D. 784 (236 N. W. 724).

There is another line of decisions which hold that the doctrine of estoppel alone would not preclude a mortgagor from acquiring a paramount title held by the purchaser at a senior mortgage sale, but fully recognize that a different rule obtains where the junior mortgage contains a warranty of title. Thus, in Jackson v. Littell, 57 N. Y. 108, 113, estoppel alone was held insufficient; but the court said: "Different considerations would apply when the mortgage contained covenants of warranty. In that case the consideration paid would represent the land as warranted, and the mortgagor would be estopped from setting up an after-acquired title, against which he covenanted in the mortgage." In Massachusetts also, estoppel has been held without application where the mortgagor bought from a stranger, who had purchased at a sale under a power in a senior mortgage, and where the covenant of warranty against

claims and demands contained the express exception, "except those claiming under the prior mortgage." Huzzey v. Heffernan, 143 Mass. 232 (9 N. E. 570). But in Ayer v. Philadelphia Face Brick Co., 157 Mass. 57 (31 N. E. 717), where there was in effect an unlimited covenant of warranty which included the senior mortgage, even though that mortgage was mentioned in the junior instrument, it was held that the title obtained by the mortgagor from the purchaser at the sale under the senior lien inured to the benefit of the junior mortgagee.

There are a few other decisions holding that the doctrine of *estoppel* will not be extended in favor of a junior mortgagee where the mortgagor bought from a purchaser at the sale under a senior mortgage; but none of those decisions refer to a covenant of warranty, and apparently none there existed. See Rauch v. Dech, 116 Pa. 157 (9·Atl. 180, 2 Am. St. R. 598, 599); Rushton v. Lippincott, 119 Pa. 12 (12 Atl. 761); Kennedy v. Borie, 166 Pa. 360 (31 Atl. 98); Plum v. Studebaker Mfg. Co., 89 Mo. 162 (1 S. W. 217), where also the purchase was not made by the mortgagor but by his wife. In Murray v. Newsom, 111 Fla. 193 (149 So. 387), the language of the warranty was not stated, but apparently from the decision the instrument covered only "the grantor's right, title, interest, estate, and demands" as they then existed. In Zandri v. Tendler, 123 Conn. 117 (193 Atl. 598, 111 A. L. R. 1280, 1284), the granting part of the junior "mortgage deed" conveyed the land expressly "subject" to a described senior mortgage. For that reason it was held that since the express conveyance covered only an equity of redemption, the mortgagor was not "estopped" by the covenant of warranty from asserting against the junior mortgagee a title acquired through the senior mortgagee. That decision, however, seems to clearly recognize that a different rule would obtain had the mortgagor "purported to convey the land [itself, and] not the equity of redemption."

While our decision might properly be grounded solely on the doctrine of estoppel, as in the *Bowlin* and *Perkins* cases, it is not necessary to do so, for the reason, as stated, that the junior security deed in this case not only conveyed the title to the land itself absolutely, and not "subject" to the senior lien, but contained an express covenant of unlimited warranty. See also, as to unlimited warranties, Code, § 29-304; *Miller* v. *Desverges, 75 Ga.* 407; *Osburn*

v. *Pritchard*, 104 *Ga.* 145 (30 S. E. 656); 14 Am. Jur. 524, §§ 54-56; 21 C. J. S. 919-921, §§ 48, 49. And see generally Merchants National Bank of Fargo *v.* Miller, *supra*; Baird *v.* Chamberlain, *supra*; Rooney *v.* Koenig, 80 Minn. 483 (83 N. W. 399).

Accordingly, there would be no error in the holding of the trial court that the lien of the junior lienholder was wholly superior to the liens of the Federal corporations, acquired from the debtor after the senior lienholder bought the property at a sale under its security deed and resold it to the debtor, if the case did not also involve other principles next dealt with.

■ The foregoing rules, however, are themselves controlled by still another principle, long settled in this State and recognized with little dissent in other jurisdictions, that a mortgage or deed to land, securing its purchase-money, and executed as a part of the same transaction in which the purchaser acquires title, will exclude or take precedence over any prior lien against the property arising through or against the purchaser. Where the contracts are simultaneously made, so as to constitute one transaction, "it makes no difference that the purchase-money mortgage may be made to a third person who advances the purchase-money at the time the purchaser receives his conveyance." *Protestant Episcopal Church* v. *Lowe Co.*, 131 *Ga.* 666, 668 (63 S. E. 136, 127 Am. St. R. 243); *Scott* v. *Warren*, 21 *Ga.* 408; *Achey* v. *Coleman*, 92 *Ga.* 745, 746 (19 S. E. 710); *Courson* v. *Walker*, 94 *Ga.* 175, 177 (21 S. E. 287), and cit.; *Missouri State Life Insurance Co.* v. *Barnes Construction Co.*, 147 *Ga.* 677 (3) (95 S. E. 244); *Cherokee Fertilizer Co.* v. *Federal Land Bank*, 179 *Ga.* 712, 715 (177 S. E. 570); *Pinckney* v. *Weil*, 183 *Ga.* 567, 569 (189 S. E. 8). While those cases involved judgment liens, the same principle applies in favor of the purchase-money creditor against mortgages and security deeds. See U. S. *v.* New Orleans Railroad, 12 Wall. 362, 365 (20 L. ed. 434); Jones on Mortgages (6th ed.), § 468; 19 R. C. L. 416, § 196, and cit.; 41 C. J. 528, §' 470, and cit.

(*a*) This priority in favor of a purchase-money security deed or mortgage does not, however, extend beyond money advanced or paid in buying the property, so as to cover sums used for other purposes. See Sherrod *v.* Hollywood Holding Corporation, 233 Ala. 557 (173 So. 33), and cit.; Gorham *v.* Farson, 119 Ill. 425 (10 N. E. 1).

(*b*) Under the preceding holdings and the agreed facts, where the Federal corporations, holding security deeds for $9000 principal, paid to an insurance company the entire $7783.75 purchase-money of the land, and, in the same transaction in which the security deeds were executed, the insurance company conveyed the land to the debtor after the insurance company had acquired good title, without dispute, to the land by a sale under a power in its senior security deed, the security deeds of the Federal corporations, as to this purchase-money, were superior to the junior security deed of the defendant, Bank of Lenox, even though, under the preceding holdings, such junior deed was not extinguished by the sale under the senior deed, but reattached to the land by virtue of the covenant of unlimited warranty contained in the junior deed. As to such purchase-money and interest thereon, the plaintiff corporations were entitled to priority. However, as to the $1216.25 balance covered by the plaintiffs' security deeds, and representing sums used for purposes other than purchase-money, the defendant bank was entitled to priority.

The Federal corporations contend, that, even though it should be held that their security deeds are inferior to that of the Bank of Lenox as to the $1216.25 of their $9000 loan not representing purchase-money, nevertheless they are entitled to priority both as to that part and the $7783.75 purchase-money under legal and equitable rules controlling the application of the $1400 of payments made by the debtor on the new $9000 indebtedness. The record shows no direction by the debtor as to how the payments should be applied, and no application by the creditor to either the purchase-money portion or the non-purchase-money portion of the $9000 notes on which the payments were made. The Federal corporations contend that under the Code, § 20-1006, and under legal and equitable rules and the facts, the court must apply the payments to any unsecured or inferior indebtedness rather than the better or fully secured indebtedness; and that the defendant bank has no equity, and they have superior equities. The equities which they urge are: that if they had not made the loan, the bank would have no lien by virtue of the debtor's reacquirement of the property; that they lent all of the money in one transaction; and that, although the bank's debt was due in 1931 and the land was sold in 1932 under the senior lien and reacquired by the debtor in 1934,

the bank did not buy in the property or bid at the senior-lien sale, and did not take any other action until it advertised the property in 1940 under a power of sale in its security deed.

In the absence of any direction by the debtor or application by the creditor receiving payments, it is too late after the litigation for either party to claim the right; and an application must be made, under the Code, § 20-1006, "in such manner as is reasonable and equitable, both as to parties and third persons," bearing in mind the additional provision that, "as a general rule, the oldest lien and the oldest item in an account will be first paid," where that provision is applicable.

There is no merit in the argument that the Federal corporations have the only or the exclusively superior equities, or that the bank is barred by laches and has no equity as to its lien, which would not be barred before 1951. The contention that the bank would have had no lien, after the sale under the senior security deed, if these corporations had not made the loan which enabled the debtor to buy back the property, applies only to the purchase-money paid to obtain the title, and manifestly has no relevancy when applied to the part of the loan used by the debtor for other purposes. The preceding rulings have already recognized the priority of the Federal corporations as to the $7783.75 purchase-money. Expressed otherwise, the bank has the superior lien as to the $1216.25, and the plaintiffs have the superior lien as to the $7783.75; or, as against the bank, the plaintiffs have a first lien indebtedness of $7783.75 and a second lien indebtedness of $1216.25.

Neither of the debts being unsecured, the rule, under decisions in this and other States, that where the parties have made no application, the law will direct the payments to be applied first to an unsecured rather than a secured debt, can not be given application; nor could such a rule be given effect for the additional reason that it is made applicable only as between the debtor and creditor themselves (*High Co.* v. *Arrington,* 45 *Ga. App.* 392, 165 S. E. 151; 97 A. L. R. 347, 351, 355, note; 48 C. J. 659, § 112), or between the creditor and an accommodation indorser of the debtor (*Horne* v. *Planters Bank,* 32 *Ga.* 1, 12; *Hargrove* v. *Cooke,* 15 *Ga.* 321 (7, 8); *Hill* v. *Opelika Wholesale Grocery Co.,* 56 *Ga. App.* 142, 192 S. E. 242), or where the third party showed no equity to change the general rule that exists between debtor and creditor. Field *v.* Holland, 6 Cranch, 8, 27 (3 L. ed. 136).

In *Andrews* v. *Exchange Bank,* 108 *Ga.* 802 (34 S. E. 183), there was a contest between an employee, as a creditor of his employer, and a mortgage creditor of the employer. The employee held a claim for salary or wages during the year preceding the case, and a claim for such work prior to that time. More than enough money or goods were received by the employee during the year to extinguish the claim for that period. Neither the employer nor the employee made any particular application of the payments. In applying the payments to the indebtedness arising during the year, rather than to the previous claim, this court held that "the general rule that 'the oldest lien and the oldest item in an account will be first paid,' while usually appropriate in a settlement between a creditor and his debtor, should not be given such application as will defeat the lien of a third person." Although the employee had claimed in the trial court a lien as a laborer during the last year of his employment, the record shows the contention that he was merely a clerk without a lien. The decision referred only to the lien of the other creditor, and treated the employee's claim as unsecured, and the contest as one between an unsecured creditor and a claimant with a lien. That decision is therefore no authority as to what division should be made in the present controversy between two lien claimants, where one lien creditor, receiving the payments, seeks to have the court apply them solely to his inferior lien, so as to retain priority for the entire amount of his superior lien, and thus defeat the other lien creditor.

Nor does the instant case involve payments made by the mortgagor from the proceeds of property on which either of the claimants held a lien. In such a case the general rule is that the creditor receiving payment from property on which the other creditor holds a lien can not apply the payment to his own unsecured or less secured claim against the objection of the other lien creditor. See, in that connection, *Cofer* v. *Benson,* 92 *Ga.* 793, 794 (19 S. E. 56) ; *Newton* v. *Nunnally,* 4 *Ga.* 356, 358; *Columbus Factory* v. *Herndon,* 54 *Ga.* 209, 210; *Rushin* v. *Shields,* 11 *Ga.* 636 (9), 642 (56 Am. D. 436) ; *Simmons* v. *Oates,* 56 *Ga.* 609; *Bufford* v. *Wilkinson,* 7 *Ga. App.* 443, 444 (67 S. E. 114).

As to the precise question here involved, there has been no decision by any appellate court of this State. However, there are Georgia decisions which have applied the rule of *pro rata* distribu-

tion or application to other situations involving controversies between lienholders or claimants of equal dignity or equity. See *Semmes* v. *Boykin,* 27 *Ga.* 47 (2); *Kyle* v. *Chattahoochee National Bank,* 96 *Ga.* 693, 698 (24 S. E. 149); *Citizens & Southern Bank* v. *Armstrong, 22 Ga. App.* 138 (2) (95 S. E. 729).

Outside authority, in cases similar to that before the court, supports the rule of pro rata application, where there are two lienholders, and the one receiving payment seeks to have it applied solely to his own unsecured or inferior lien indebtedness. In Coles *v.* Withers, 33 Grattan, 203, 204, the Virginia court held that in such a case both claimants had equities; that neither was entitled to entirely exclude the other; and that "the only proper solution of the difficulty is in applying the credits *pro rata* to all the debts." That decision, as an additional basis, referred to the fact that the debts were included in one instrument, and that "there are numerous cases which sustain the pro rata application, especially where there are several claims secured by one *instrument* or judgment;" citing Blackstone Bank *v.* Hill, 10 Pick. (Mass.) 128; White *v.* Trumbull, 3 Green (N. J.), 314 (40 Am. D. 207); Shaw *v.* Picton, 10 Eng. C. L. R. 443. See also other cases, supporting the rule of pro rata application as between secured and unsecured, or secured and less secured, indebtedness, where a note or notes have been taken for an indebtedness, part of which is secured and part unsecured, or the debts have been cast into one account, and payments are made generally toward the whole debt, and credited generally on the obligation: Sheldon *v.* Bennett, 44 Mich. 634 (7 N. W. 222, 224); Sproulle *v.* McFarland (Tex.), 56 S. W. 393 (4), 695; Perris *v.* Roberts, 1 Vernon, 35 (23 Eng. Rep. Reprint, 289); 48 C. J. 660, § 112. In the present case, both the indebtedness secured by the prior lien and the indebtedness secured by the inferior lien were included in the same instruments of the creditor receiving the payments, and, so far as the record shows, were merely credited generally thereon or on one general account, without application to either particular indebtedness.

In a similar situation, the same rule of pro rata application was given effect by the Michigan court in a case which did not involve two lien creditors, but the holder of a conditional-sale contract having also a claim for unsecured indebtedness, and general creditors of the debtor represented by a receiver. It was there held,

where the indebtedness had been carried and the payments made on one general account, that such payments would be applied *pro rata* on unsecured and secured indebtedness of the holder of the conditional-sale contract. McMullen Machinery Co. *v.* Grand Rapids Trust Co., 239 Mich. 295 (214 N. W. 110, 55 A. L. R. 1157).

Nothing was held in *Cherokee Fertilizer Co.* v. *Federal Land Bank* (179 *Ga.* 712, supra), contrary to these rulings. It appears in the statement of facts that a small part of the loan represented its expenses, but all of the net amount represented purchase-money, and the Land Bank was given priority for all of its loan. That case involved no question of payments or their application. The sole question raised and decided was the same as that which we have already determined in favor of the Federal corporations, that a security deed or mortgage for purchase-money, given by the debtor in the same transaction in which he reacquires title, will take precedence over a previous lien, which, except for the purchase-money character of the loan, would have priority. In that case the court dealt only with this question; no effort was made by any party to split the priority as to the small amount of expenses of the loan, and no decision was made on such a question.

Accordingly, on the question of a proper application of the $1400 paid in this case, the court in applying equitable principles should have made a pro rata application between the $7783.75 representing purchase-money and the $1216.25 not representing purchase-money. Therefore it should have been decreed that only $189.19 of the total payment should be applied to the $1216.25 of inferior lien indebtedness, leaving $1027.06 principal due thereon, as to which the defendant bank has priority over the liens of the Federal corporations; and that the remaining $1210.81 of the $1400 payment should be applied to the $7783.75 superior-lien indebtedness, as to the balance of which with interest the Federal corporations have priority.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Duckworth, J., who dissents from the affirmance, and concurs in the reversal.*

DUCKWORTH, Justice, dissenting. ■ The transactions by which Medford reacquired the land here involved were simultaneous, and hence it can not be correctly said that any one conveyance preceded the other in point of time. Therefore Medford did not reacquire

title to the fee, but only an equity subject to the Federal Land Bank deed securing the purchase-money and the excess loaned to him. Given the most liberal interpretation that its language will permit, Code § 29-111 is still limited in its application to the actual title, no more and no less, subsequently acquired. That section was never intended to refer to the fee-simple title when in fact the subsequently acquired title is to the equity only. This view is sustained in Raleigh State Bank v. Williams, 150 Miss. 766 (117 So. 365). There it was held that it was immaterial whether the amount secured by the deed to secure debt given by the owner to the purchaser at the foreclosure sale constituted purchase-money or not, since the principle of law whereby the title of the owner inured to the benefit of the second deed gave to the latter no better right than that acquired by the owner. To the same effect see Home Owners Loan Corporation v. Guaranty Title Trust Co., 168 Tenn. 118 (76 S. W. 2d, 109).

■ At the beginning of division 2 of the majority opinion a sound statement of law defining the consequences upon the title of a sale under a power of sale is made. It is there said that such a sale "not only extinguishes the right of redemption, but divests all junior mortgages and other junior incumbrances on the property." That opinion goes on to state that such junior liens are detached from the property sold and attach to any proceeds from the sale in excess of the first lien. Having thus stated the law that is plain and explicit, and which enables every one to ascertain with certainty the condition of the title after such sale and eliminates all necessity for giving further attention to junior liens, the majority opinion then proceeds to obliterate this certainty by writing into the opinion a will o'the wisp, thereby placing the title to such property in doubt and uncertainty so long as the debts represented by junior liens have not been paid. There can be no dissent from the assertion that an unambiguous Code section must be given the meaning that its language clearly implies and that the legislative intent as indicated by the language of the statute must be given effect. Every word of section 29-111 manifests a clear legislative intent to require a grantor to live up to his word and to estop him from profiting by his own wrong. Nothing in that section indicates a legislative intent or purpose to impose any restriction or obligation upon a grantor who has been guilty of no

wrong, and who has conveyed only property which he had a right to convey, and whose conveyance has never been challenged. Medford purported by his deed to the Bank of Lenox to convey an equity of redemption in the lands therein described. His deed has not been challenged, nor has his right to execute the same, nor indeed can the grantee therein at this time deny that it received everything that the deed purported to convey. Yet the majority opinion, claiming authority under the above Code section, deals with Medford as if he had been guilty of wrong, by imposing an unauthorized restriction upon his right to subsequently become the owner of that property.

Medford conveyed to the Bank of Lenox, not the legal title to the land described, but only the equity of redemption therein. *Hockenhull* v. *Oliver,* 80 *Ga.* 89 (4 S. E. 323, 12 Am. St. R. 235); *Chapman* v. *Ayer,* 95 *Ga.* 581 (23 S. E. 131); *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (36 S. E. 927); *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416 (117 S. E. 247); *Exchange National Bank of Fitzgerald* v. *Pearsons-Taft Co.,* 159 *Ga.* 168 (125 S. E. 377); *Smith* v. *Farmers Bank of Glenwood,* 165 *Ga.* 470 (2) (141 S. E. 203). The warranty clause in that deed applies to the property which the deed conveyed (equity of redemption). Sweet *v.* Brown, 53 Mass. 175 (45 Am. D. 243); Merritt *v.* Harris, 102 Mass. 326; Van Rensselaer *v.* Kearney, 52 U. S. 297 (13 L. ed. 703); Zandri *v.* Tendler, 123 Conn. 117 (193 Atl. 598, 111 A. L. R. 1280); *White* v. *Stewart,* 131 *Ga.* 460 (62 S. E. 590); *Dailey* v. *Springfield,* 144 *Ga.* 395 (87 S. E. 479, Ann. Cas. 1917D, 943). In Zandri *v.* Tendler, supra, it is said: "If the title purporting to be conveyed is an equity of redemption, the warranty and estoppel arising out of it will extend no further than to protect the grantee from loss of that title." In ruling on the same question, our own court in *White* v. *Stewart,* supra, said: "If a deed purport to convey the right, title, and interest of the grantor in and to certain described realty, instead of conveying the realty itself, the covenants in the deed will be limited to the right or interest which the grantor has in the property." The principle announced in that ruling is that the warranty clause of the deed is limited solely to the property which the deed conveys. This principle can not be avoided by an argument that the deed there under consideration purported to convey only the right, title, and interest of the grantor

in the land. Such an interest might be property, and if so the rule makes the warranty clause applicable thereto. Where, as in the present case, the interest conveyed is the equity of redemption, under the above rule the warranty clause of the deed applies only to the equity of redemption. In *Dailey* v. *Springfield*, supra, it was held that the deed conveying "a bare contingency or possibility" was void; and this court said: "A covenant of warranty in such deed will not inure to the benefit of the vendee, or his heirs, so as to subject after-acquired property of the vendor to such covenant." In the deed there considered certain lands were described, but instead of purporting to convey the described lands the terms of the deed restricted it to a bare possibility or expectant interest in such lands. The grantor subsequently acquired the identical land described in the deed; but it was held that the warranty clause in the deed not applying to the land itself would not cause his subsequently acquired title to inure to the benefit of the grantee.

The above authorities establish the rule that the warranty clause applies only to the property conveyed by the deed; and I assume that the majority will not dissent from this principle. But the majority contend that the deed from Medford to the Bank of Lenox conveyed the legal title to the land therein described free from incumbrance and that the warranty clause contained therein therefore applies to the land itself. They concede that the deed makes some reference to the pre-existing deed to Metropolitan Life Insurance Company, but assert that the language of the Bank of Lenox deed does not make it subject to the pre-existing lien. The deed to the Bank of Lenox contains the following clause: "It is agreed and understood that the Metropolitan Life Insurance Company holds first mortgage deed on the above described tract in the amount of $6000." The cardinal rule to be applied in construing deeds is that effect must be given to the intention of the parties as disclosed by the provisions of the deed as a whole. Code, § 29-109; *Huie* v. *McDaniel*, 105 *Ga.* 319 (31 S. E. 189); *Cobb* v. *Wrightsville & Tennille Railroad Co.*, 129 *Ga.* 377 (58 S. E. 862); *Keith* v. *Chastain*, 157 *Ga.* 1° (121 S. E. 233); *Simpson* v. *Brown*, 162 *Ga.* 529 (134 S. E. 161); *Henderson* v. *Sawyer*, 99 *Ga.* 234 (25 S. E. 312). Measured by this rule of construction, what does the deed here under consideration mean? The first and controlling factor is the intention of the parties. The majority make the futile attempt to

escape the compelling weight of this rule of construction, as it is clearly stated in § 29-109, supra, in the following language, "but the intention of the parties, from the whole instrument, should, if possible, be ascertained and carried into effect," by citing Code, § 85-503, and quoting an excerpt therefrom. That section, while declaring that a conveyance should be construed to convey the fee unless a less estate is mentioned, further asserts that if a less estate is expressly limited, "the court shall not by construction increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, the court may hear parol evidence to prove the intention." Thus the very section cited by the majority makes the intention of the parties the ultimate and controlling consideration and goes so far as to provide that this intention may be shown by parol evidence. There is no room for a reasonable doubt as to the intention in the present case. The parties to the deed removed all possibility of doubt by writing into the face of the deed their intention. It is there written that those parties agreed and that those parties understood that there was a prior deed for $6000 on the land described. If both the grantor and the grantee understood this fact and if they both agreed that it was a fact, as declared in the deed, then this attitude of the parties is irreconcilable with the theory that either of them intended that the deed conveyed something that they both understood and agreed that it could not convey. In an attempt to answer this argument, the opinion resorts to the assertion that the grantor inserted this clause to avoid a possible criminal prosecution for cheating and swindling, under the Code, §§ 26-7401, 26-7410, 61-9901. By such argument the majority assert that the grantor, knowing he had no right to convey the fee and having made this fact clear to the grantee, yet intended to and actually did by the deed convey that which they both agreed that he did not own. They place the grantor in the ridiculous position of seeking in the one case to carefully guard against any possible future criminal prosecution and at the same time recklessly and carelessly intending to commit the very act which alone could constitute a basis for such prosecution. Their construction of the deed makes both the grantor and grantee intend to do the perfectly useless act of conveying something that could not be conveyed, by

ignoring the plain statement of those parties to the contrary as appears in the deed itself. How is it possible for any one to conclude that after agreeing that there was another deed and that it was a prior deed, the parties intended to make the deed then being executed a first or prior deed? In my judgment a construction of this deed to the effect that it was not made expressly subject to the prior deed sacrifices substance for theory and is a refusal to recognize the unambiguous language found in that deed. In *Henderson* v. *Sawyer, supra,* it is said: "Since the adoption of the Code, a mere repugnance in words will not authorize a court to hold that there is a real repugnance in a deed, and consequently to annul the latter of two inconsistent clauses therein, *when the actual intention of the maker, viewing the instrument as a whole, can be arrived at without serious difficulty."* (Italics mine.) Courts are not authorized to refuse to give full effect to the intention of the parties to a deed when that intention can be ascertained from the deed as a whole. In *Beckcom* v. *Small,* 152 *Ga.* 149 (108 S. E. 542), the second security deed stated that "There is a prior claim for $25,-000.00 in favor" of a named person, the grantee in the first deed, and this court construed that clause to mean that the deed containing it was subject to the prior deed referred to therein. I am unable to see how, in the face of such previous rulings of this court together with the language of the clause in the present deed above quoted, it can be held that the Bank of Lenox deed is not expressly subject to the prior deed to the Metropolitan Life Insurance Company. If this fact be conceded, then the controlling rulings of the majority on this issue are untenable on principle.

The majority correctly hold that, under the Code, § 29-111, if the grantor expressly or impliedly asserts that his deed or mortgage is a first lien when in fact there is an outstanding prior lien on the property, his after-acquired title will inure to the benefit of the grantee. But, not content with announcing this sound interpretation of the meaning of the Code section, that opinion goes further and erroneously asserts that the section applies where the second security deed expressly recites that it is subject to a prior security deed. As authority for this ruling they quote from *Bowlin* v. *Hemphill,* 180 *Ga.* 435 (supra), and cite *Caffey* v. *Parris,* 186 *Ga.* 303 (supra), *Horton* v. *Johnson,* 187 *Ga.* 9 (supra), and *Perkins* v. *Rhodes,* 192 *Ga.* 331 (15 S. E. 2d, 426). In my opinion only

the first and last cases relied upon are applicable to the ruling made. The second and third cases dealt with different questions and are not authority for the ruling made. *Bowlin* v. *Hemphill,* supra, was a Per Curiam decision, with Justices Bell and Hutcheson dissenting. There the majority cited, for support of the ruling, *Hill* v. *O'Bryan,* 104 *Ga.* 137 (2) (30 S. E. 996), where it was merely held that where one gives a mortgage on land in his possession, to which he has no title, his subsequently acquired title inures to the benefit of the grantee; and *Isler* v. *Griffin,* 134 *Ga.* 192 (4) (67 S. E. 854), where it was merely held that a remainderman who executed a deed during the lifetime of the life-tenant, purporting to convey his interest as a remainderman, would not be permitted to repudiate and avoid his deed at the death of the life-tenant. Thus it is clear that the cases relied upon do not in language or principle support the ruling made. On the other hand, the dissenting opinion cited *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (3) (36 S. E. 927), which held that when the owner of land conveys it by security deed he retains only an equity of redemption, and that a second deed from such grantor conveys that equity of redemption and that only; *White* v. *Stewart,* supra, which held that the warranty clause in a deed applies only to the property conveyed thereby; and *Daily* v. *Springfield,* supra, which held that the warranty applies only to the property conveyed by the deed containing the warranty. Thus the cases cited by the minority abundantly support their position and demonstrate the unsoundness of the ruling made by the majority. The decision in *Perkins* v. *Rhodes,* supra, was not by a full bench, and is unsound for the same reasons stated in this dissent.

The majority cite a number of decisions from other jurisdictions. Admittedly courts of other jurisdictions are not agreed upon the question here under consideration, but I think an examination of the published decisions will disclose that none are better considered and contain sounder reasoning than Zandri *v.* Tendler, supra. There it is pointed out by the Connecticut court that many of the decisions of other jurisdictions announcing the other view contain obiter, are controlled by statute, or go off on points other than the main question here under consideration, and therefore are not persuasive as authority. The majority cite Ayer *v.* Philadelphia &c. Brick Co., 157 Mass. 57, 31 N. E. 717; but an examination of the

opinion in that case discloses that the decision was predicated upon the peculiar language of the warranty clause. In the granting clause there dealt with, the land conveyed was stated to be conveyed subject to a certain right of drainage, a certain easement,. and "the mortgage hereinafter named." The warranty clause provided that the grantor "shall warrant and defend the same .to the said grantees, and their heirs and assigns, forever, against the lawful claims and demands of all persons, except the right of drainage and the easement aforesaid." In the opinion it was said: "If the granting part of the deed stood as now, and was followed by general covenants with no exceptions, the warranty would be held to be limited to what purported to be conveyed,—that is, to the land subject to the mortgage." Thus it is clearly demonstrated that the decision there was predicated upon the fact that the warranty expressly eliminated two of the three conditions stated in the granting clause, but omitted to withdraw from the warranty clause the first mortgage; and, as stated by the court, had this not been true, a diametrically opposite conclusion would have been reached. In Otter *v.* Lord Vaux, 43 Eng. Rep. 1381, the court expressly placed its decision upon the construction it gave to the reacquiring by the owner of the property from the first lienholder. The court construed this conduct of the grantor to be tantamount to his merely paying the debt secured by the first lien, thereby allowing the second lien to become a first lien; and the court stated expressly that a different case would have been made if this had not been true and if the property had been reacquired through a third person. The majority in commenting on the decision in Murray *v.* Newsom, 111 Fla. 193 (149 So. 387), state that although the language of the warranty is not disclosed, yet it is apparent from the decision that the instrument conveyed only such interest as the grantor had in the premises. Whether this observation be justified or not, the Florida court there held that the title acquired after the foreclosure of the first lien did not inure to the benefit of the junior lien, and in concluding the opinion it was said: "Mickler, as the purchaser of the land at foreclosure sale, acquired the Greys' title divested of the two liens. Acquiring the title from Mickler afterwards was no act of bad faith. It was not the setting up of an outstanding after-acquired title which was not affected by the mortgage. The Greys did not impeach or nullify their deed of mortgage. There

was no element of fraud in the transaction nor did the title subsequently acquired by the Greys directly or impliedly contradict their solemn affirmations in their mortgage to Hanan." Another case which the majority opinion relies upon, with the comment that it "seems almost identical in all respects as to the question under discussion," is Martin v. Raleigh State Bank, 146 Miss. 1 (111 So. 448, 51 A. L. R. 442). I have examined the decision in that case, and find that it expressly recites that the Mississippi Code provides that a conveyance without warranty shall operate as a statutory quitclaim and release, and that a quitclaim and release shall estop the grantor and his heirs from asserting a subsequently-acquired title to the land conveyed. This provision of the statute of the State of Mississippi not only authorized but required the ruling there made, and it demonstrates that the decision is no authority whatever for the majority ruling, since Georgia has no such statute. I am confident, in view of the authorities above cited, that the reacquirement of the title to the land involved did not inure to the benefit of the Bank of Lenox, the grantee in the second security deed.

■ The further ruling by the majority that on principles of equity, under the Code, § 20-1006, the Bank of Lenox as the holder of a junior lien was entitled to be heard on the question of applying the $1400 previously paid to the Federal Land Bank, is unsound and can find no support in equitable principles. The fallacy of the majority ruling is found in its treatment of the question as if the fund were subject to some lien or some claim of the Bank of Lenox. That money was the private property of Medford, and he had a perfect right voluntarily to apply it to the legitimate and legal claims of the Federal Land Bank. The Bank of Lenox had no title to or interest in any part of that fund. That bank made no effort to collect any part of that money for application to its claim against Medford, but stood idly by while the Federal Land Bank, diligently and energetically looking after its own interests and affairs, made the collection from its debtor. In *Newton* v. *Nunnally*, 4 *Ga.* 356, it was held: "A plaintiff having two executions which are liens on money, in the hands of the sheriff, arising from the sale of defendant's property, can not apply the fund to either fi. fa. at his option; *but the law will appropriate the proceeds of the debtor's property to the older lien.*" (Italics mine.)

In *Riverside Milling & Power Co.* v. *Bank of Cartersville*, 141 *Ga.* 578 (3-a) (81 S. E. 892), it was said: "In this case the other debtors who took no part in the contract, or in the making and application of the payment, have no ground for complaint." I repeat, the Bank of Lenox, which took no part in the collection of this fund, has no right to be heard on the question of applying that payment to legal claims of the Federal Land Bank. The only parties having an interest therein and hence a right to be heard on the question of application are Medford and the Federal Land Bank. Therefore, instead of a case where a third person is entitled to be heard, as the majority rules, this presents a simple matter between the debtor and creditor, with no third parties entitled to speak; and in such a case it can not be successfully denied that the law will apply the payment to the lesser secured or older claim. *High Co.* v. *Arrington*, 45 *Ga. App.* 392 (supra). If the other rulings of the majority are to stand, thereby rendering the money advanced by the Federal Land Bank, in excess of the amount required to repurchase the land, inferior in rank to the deed held by the Bank of Lenox, then on application of the above principles this excess, being the least secured, is the portion of the claim to which a court of equity should apply the payments in question. For all of the reasons stated, I am unable to agree with the majority, and feel justified in stating fully the grounds of my dissent, because of the importance of the questions involved.